PATRICK COLLINS ET AL. v. WILLIAM LEAFEY.

ERROR TO THE COURT OF COMMON PLEAS NO. 3 OF PHILA-
DELPHIA COUNTY.

Argued January 30, 1889—Decided February 11, 1889.

1. A rule of court providing that the several matters in the charge to which exception is taken shall be distinctly stated before the jury has retired and that no general exception to the whole charge shall be allowed, may be enforced or relaxed in the discretion of the court below.

2. Where a general exception has been sealed to the entire charge, bringing it regularly before this court for consideration, and afterwards the parts excepted to are separately and specifically assigned as error, there is a substantial conformity with the rules of this court relating to assignments of error.

3. An inaccurate recital or reference to the testimony, in a review of the evidence by the trial judge, is not cause for reversal, unless as a whole it is substantially erroneous and might have had an important bearing upon the view taken of the case by the jury.

4. A liberal discretion must be allowed to the trial judge, in the use of comment upon the unexplained absence of testimony which might naturally be looked for in a case, as he is in far better position than a court of error to determine the occasion for it

Statement of Facts.

5. As the law does not make one an insurer against accidents, it is error to charge in an action for negligence, that "it is the duty of every one who occupies the highway to do so with such care that no injury can happen to any one."

6. In cases of personal injury involving pain and suffering, it is error to charge that there is no rule of law to assist the jury in arriving at a conclusion, instead of laying down in most explicit terms the limitation of their verdict to compensation, and compensation alone.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 58 January Term 1889, Sup. Ct.; court below, No. 749 December Term 1883, C. P. No. 3.

On January 17, 1884, William Leafey, by his father and next friend, Lawrence Leafey, brought an action in case against Patrick Collins and others, trading as P. Collins & Sons, to recover damages for personal injuries alleged to have been caused by the negligence of the defendants. Issue.

At the trial on May 29, 1888, in the plaintiff's case in chief, his mother testified that her son, about two years and two months old, was sitting on the step with two other boys; she asked Joe Sternberger if he would mind Willie while she took her bread to the baker; when she came back, they were not there; "Lawrence brought Willie back; I examined him and couldn't find anything the matter, but that night he had me awake all night, saying his leg hurt him. He fell asleep about 5 o'clock; he awoke about 8 o'clock; he couldn't stand on his leg, the right leg; I didn't call in a physician until the next day, when I took him to the Episcopal hospital;" he remained in the hospital nearly three years and six months, in the Children's Hospital; the screens at the factory were never fastened before the accident; not until four or five days thereafter." Lawrence Leafey, plaintiff's older brother testified: "I was on back of Joe Sternberger's velocipede, and when we turned round to come up, saw screens fall on Willie. Willie was not on velocipede; he bumped against the screens and they fell over on him." Joseph Sternberger testified: "I had Lawrence on the back of my velocipede, and we rode down to the corner, Palethorp and Thompson streets. When we got to the corner, I turned round, and saw Mike Galen picking little Willie

Leafey up. Willie was lying on the ground right in front of the wire screens, in front of P. Collins & Sons. The wire screens were standing against the wall." On cross-examination: "After I took the child home I came back to see what was the matter with the screens, and that is the time I found out they were not fastened." Galen could not be found for the service of a subpœna. Other testimony was to the effect that the screens were not fastened. Physicians testified to the nature of the injury as resulting in abscesses; the plaintiff was permanently maimed or crippled; the injuries could have been caused by the fall of the screens upon him. The fall from the window or the push-cart (previous occurrences mentioned), could not have produced the inflammation; it was too recently formed.

On the part of the defendants, testimony was introduced to the effect that the child was always lame before the accident, always dragged its leg; he had fallen out of the window upon the sliding cellar door, and off a sewing machine, before this fall; he was scrofulous; that the screens were usually fastened in the daytime by being tied by a string to a fixed screen.

In rebuttal, witnesses testified for plaintiff that he was never lame before the accident, and was a strong, healthy child.

At the close of the case upon the evidence, the court, FIN-LETTER, P. J., charged the jury as follows:

This action is brought to recover damages for an injury which, it is alleged, arose from the negligence of the defendant.

The first question for you to determine in this case is whether the screen fell upon the child. [On that question, you have the testimony of the older boy, who describes all that they were doing in the neighborhood of the screen, and also describes that he saw the child on the ground, and that the screen was upon him, and that McLean picked him up.][1] The smaller boy, at that time four years of age, has told you that the boy caught hold of the screen, and it fell upon him. There is no doubt but that the little boy thought he was telling the truth; but, inasmuch as five years have passed, and as this child was five years of age at that time, it is proper I should say to you that you should take his version with a great deal of caution. There are no other witnesses that testify upon this

question, but there are other facts that perhaps may have some effect upon the question of whether the screen fell upon the child or not.

[In the first place, you have the testimony of the nephew. And he tells you that the next day the mother of the child had spoken to him about the screen falling upon the child.] [2] He was then in the employment of the defendants, and had charge of the screen himself. [In addition to that, you have the testimony of the colored man, who was also an employee of the defendants, to whose attention this subject, the falling of the screens, was called.] [3] Again, [you have the undisputed fact that McDare, an employee of the defendants, was there, and saw the accident occur. At all events, he picked the child up.] [4] In addition to all that, [you have the fact that the child was carried home as if hurt, and it was regarded as if there had been an accident; there is no evidence in this case that the child received any other injury which induced the parties to take it home.] [5] [There is no evidence that anything else than the falling of the screen injured it. There is no evidence that it fell while playing and was thus injured. There is no other evidence to account for what appeared to be an injury to the child.] [6]

[I have referred to it as a fact that these employees of the defendant were there nearest the accident, and, to a certain extent, understood the injury, and had every opportunity to inquire into it and ascertain whether at that time the screen had fallen upon the child or not. There is, in consequence of all that knowledge, no evidence which has attempted to explain in any way the fact of how the accident occurred at that time, which did occur.] [7]

Now, from all these things, gentlemen, it is your duty to carefully consider, especially the testimony of the child. It is for you to say whether or not the screen at that time fell upon the child. If it did not, there is an end to the case. If, however, you are satisfied from the testimony that that is so, that the screen did fall upon the child, then you proceed to the next question which arises in the natural order of things. If the screen fell, did it produce the injury complained of? Now upon that question you are driven entirely to the testimony of the witnesses who saw the child at the time, and to

the testimony of the doctors. And it is not necessary to go over the testimony in detail. But the doctor who first saw the child said he saw evidence of inflammation. That doctor also tells you that the result which followed that inflammation, ulcers and things of that kind, might have been produced by the falling of the screen upon the child. There does not appear to be any answer to that testimony, except the assertion that the boy was scrofulous, and that these sores pointed to came from that. I don't recollect any witness who testifies that this was scrofulous. Of course, if the jury do recollect such testimony, they will give it the proper weight. There is certainly no witness who says that at that time the child had scrofula. You will understand that there is a distinction between saying one has scrofula, and he is scrofulous; every one is scrofulous who has that condition which may be developed into scrofula. As I said before, there is no evidence at all that the child was scrofulous at that time, or is scrofulous now. I don't know whether the doctors have said anything about it; but it seems to me if a person was scrofulous it would require a less amount of violence or injury to develop scrofula proper, or such things as have been testified to as existing in this child. The question you are to determine is not whether this child was scrofulous at that time, or now; that is not your duty. Your duty is to ascertain from the evidence in this case whether the injury the child did receive did develop into scrofula. Now, it is not a matter of any consequence that the child was in that condition of body known as scrofulous, or liable to develop a particular injury of this kind. The defendants are just as much liable if the boy was scrofulous and this injury produced the result described, as if the child was in perfect health at the time.

Now, gentlemen, if on a fair and full consideration of the testimony you are not satisfied that the result was the necessary result of the injury the boy received at the time, your verdict will be for defendants. But if you are satisfied the result was from the injury he received, then you must proceed to the other considerations of the case. Now, in cases of this kind, as doubtless you have heard, it is not only necessary that the defendant should be negligent, but it must appear that the plaintiff should not have been. In this particular case the

child was but two years of age, and it is my duty to say to you, gentlemen, that a child of that age could not be held accountable in an action of this kind.

In other words it could not be negligent, and therefore in this case the single question for you to determine is whether the defendants were negligent in the manner they are charged with, with the screen.  [I need scarcely say to you that it was their duty, and it is the duty of every one who occupies the highway, to do so with such care that no injury can happen to any one.] [8]  You have heard the evidence in relation to this screen.  All the witnesses for the plaintiff testified it was not in any way fastened, and had not been for a long time before the accident happened.  The defendants have produced one witness, and even he, who took charge of the screen, was unable to tell you that it was fastened before the accident.  He tells you that the fastenings were partly taken away.  It is for you to say if it had been fastened upon that day or at successive periods it was a proper and careful fastening of the screen. I shall call your attention to the fact that in the use of the highway in cases of this character it was their duty to know the habit of the children of tender age.  It was their duty to know whether they were likely to take hold, or run against, or interfere with it, or do anything that would have a tendency to disturb it.  It is your duty, gentlemen, in considering this question of carelessness or negligence, in considering whether the defendants took the proper care, to consider the habits of children, and apply them to the facts of the case as you may find it.  Of course, it altogether depends as to how you find the facts, whether the defendants in the use of the screen used it with care, recognizing the rights of everybody in the community; using such care as a reasonably prudent person would have taken ordinarily under the circumstances.

If you should find there was no negligence on the part of the defendants, then, of course, your verdict will be for the defendants.  If, however, you find them negligent then an action of damages arises.  Now, [in estimating damages, you are to consider, in a case of this kind only, the pain and suffering of the child in consequence of the injury.  There is no rule of law to assist you in arriving at a conclusion.  That is a matter entirely for yourselves.] [9]  [He is also entitled to compensation

for, first of all, the deformity which, the doctor has said, resulted from this accident. That is a matter, gentlemen, left entirely to your own discretion and judgment.] [10] If there is a permanent injury and deformity arising from the accident, then the principal question for you to determine is how far it has injured his earning capacity. The doctors have told you that the leg being contracted, and they have given you the condition of his leg, I may assume and you may assume that for all hard labor, such as requires a sound body, arms, and legs, for all such labor as that, he has been incapacitated; he cannot perform the labor that a person would ordinarily perform. In considering this question you must also consider that while he may be thus impaired, still there are a number of avocations in which he would be just as efficient as if he had legs and arms unimpaired. I need not go over the number. It is your duty to consider that. In other words he is not hopelessly helpless, because he is lame. There is another consideration, that there are the highest fields of labor in which his lameness would not be felt. There are numbers of avocations in life, such as keeping store and professions, in which this injury, this lameness, would not interfere with his success in life. But, of course, in any of the higher fields of labor there is required a complete education and good training.

[In considering this case you will consider what compensation you ought to give him from the time he is twenty-one. Your measure of damages will be for the time he may live. And for all that time you will compensate him for the time for which the injury has interfered with his earning capacity.] [11]

I refuse the defendants' point, which reads as follows:

If the plaintiff was engaged in play with his companions, upon the public street, and in the course of such play ran against and knocked down the screen, the defendants are not liable for any injury which ensued, the children being trespassers in using the highway for purposes for which it was not intended.

The jury returned a verdict in favor of the plaintiff for $5,000. A rule for a new trial having been discharged, the defendants took this writ, specifying as errors:

1–11. The several parts of the charge embraced in [ ] [1 to 11]

*Mr. John G. Johnson* and *Mr. Richard P. White*, for the plaintiffs in error :

1. The jury were told that the older boy, Joe, had testified that he saw the child on the ground and that the screen was upon him.   This boy twice testified that when he first looked, Galen was picking up the plaintiff and the wire screens were standing against the wall.

2. It was error to permit the jury to find the fact that the screens did fall upon the plaintiff, from circumstances which did not in any way prove its existence.   The only witness who said that he saw the occurrence was too young at that time to make reliable observations.   The other matters which the jury were told they might consider as establishing the fall did not tend to prove it.

3. The learned judge erred in charging that " There is no evidence that anything else than the falling of the screen injured it."

There was the testimony of the boy Washington, that he had seen the plaintiff at play the afternoon of the accident, and two witnesses testified that a push-cart had run over him three days before.

4. It was clear error to charge that it was the duty of everyone who occupied the highway to do so "with such care that no injury can happen to any one."   Those who occupy the highways do not guarantee the safety of all others who occupy them.

5. There was a failure to guard the jury against being misled in estimating the amount of damages.   They might infer from what they were told that they were justified in determining the amount of compensation without being troubled by any rules of law.   Unless the jury are carefully instructed as to their duty to give just compensation only, and not more, they inevitably go wrong.

*Mr. A. S. L. Shields*, for the defendant in error :

1. An inspection of the bill of exceptions will show that the defendants had sealed but a general exception to the whole charge, and did not in special exceptions "state distinctly the several matters of law in such charge to which " they excepted, thus violating Rule XL., § 162, of the Rules of court below.

But if this general exception to the whole charge is in proper form and sealed according to law, then the defendants have violated Rule XXIII. of this court, in that they have failed to quote the charges excepted to, totidem verbis, in any of the assignments of error, and for this violation of the last mentioned rule the plaintiff invokes the infliction of the penalty named in Rule XXIV. In raising these objections the plaintiff in effect demurs to the pleadings in this writ of error, following the precedents: Burkholder v. Stahl, 58 Pa. 371; Neiss v. Foster, 64 Pa. 495.

2. Nowhere in the charge does it appear that the learned judge gave binding instructions, but, on the contrary, fairly and fully left the facts to the jury. "If the facts are left to the jury it is for them to be accurate. The responsibility is upon them. That is their sworn duty, even if an inaccuracy should appear in a recapitulation of the testimony by the judge. If an error be committed in this sort of reference by the judge, counsel ought to call his attention to it, and if after that it is persisted in, then there arises a good reason for an exception. That was not done here:" Thompson, C. J., in Yerkes v. Wilson, 81* Pa. 19. And if there are any rules, legal or otherwise, by which an estimate of the compensation for pain and suffering or deformity can be calculated, the defendants have failed to cite the authorities where they may be found. The court charged: "If there is a permanent injury and deformity arising from the accident, then the principal question for you to determine is, how far it has injured his earning capacity." Add to this the other language of the charge upon the subject of damages, and the charge as a whole most carefully instructed the jury in the premises, and rigidly guarded the rights of the defendants.

Opinion, Mr. Justice Mitchell:

The bill of exceptions contains the entire charge of the learned judge who presided at the trial, and a general exception on the part of the defendant. This was undoubtedly contrary to the rule of the court below, which requires that the several matters in the charge to which exception is taken, shall be distinctly stated before the jury shall have withdrawn, and that no general exception to the whole of the charge shall be

allowed.    This is a good rule.    It tends to correct accidental
errors in the statement of either the facts or the law, before
they have had opportunity to do injury, and to encourage trials
upon the merits of the real issues, and not upon trivial points
or small inaccuracies, subsequently worked up, under the spur
of an adverse verdict, into undue importance.

But the rule is meant to facilitate, not to impede the fair
and accurate conduct of litigation, and there may therefore
be cases where it is properly relaxed by the judge, for whose
protection it was mainly enacted.    Such was apparently the
case here.    It appears that two exceptions were formally
taken, reduced to writing, and signed by the judge, but the
paper having been mislaid, the judge allowed a general excep-
tion to the whole charge, and signed the bill in that form.
This was entirely within his discretion to do, and the whole
charge is therefore regularly before us for consideration.

Further objection is also made by the defendant in error to
the assignments of error, but they are in substantial conformity
to our rules.    The charge is first given as a whole, and then the
parts excepted to are separately and specifically assigned for
error.    This is the correct practice.

Passing, therefore, to the consideration of the assignments
of error, we have at once an illustration of the wisdom and
value of the rule of court referred to.    The first assignment is
that the learned judge erred in charging that the older boy
had testified that the screen fell upon the plaintiff.    By the
testimony of Joseph Sternberger, this appears to have been an
error, but it was, no doubt, a mere inadvertence, in attribut-
ing this testimony to " the older boy," which was Sternberger,
instead of the "older brother," Lawrence Leafey, who did so
testify, an error which would no doubt have been immediately
corrected and rendered harmless, had the judge's attention
been called to it as required by the rule of court.    As it is,
however, the error may have had an important bearing on the
jury's view of the case, because Sternberger was a much older
boy, and his memory, therefore, entitled to much greater
weight than Lawrence Leafey's.    This assignment is sustained.

The next five assignments are somewhat similiar in charac-
ter, and need not be noticed in detail.    They cover recitals of
evidence to the jury, which though not perhaps strictly accu-

rate, are not as a whole substantially erroneous, and not likely to have misled the jury.

The seventh assignment involves a point of some importance in practice, namely, how far a judge may comment on the absence of evidence. The reasons why certain evidence which might naturally be looked for, may not be produced, are so many and so various, and sometimes so difficult of explanation, that obviously this is a kind of argument that requires careful handling, especially when used from the bench. But it is a legitimate instrument in the investigation of truth, and a liberal discretion in its use must be allowed to the trial judge, who is in a far better position to determine the occasion for it than this court possibly can be. The learned judge in his charge, alluding apparently to an argument that the child had not been injured as claimed, that in fact there had been no accident at that time and place, reminded the jury of the presence of several employees of the defendant at the scene of the alleged accident, and that none of them had been produced to disprove the fact. We cannot say that this was exceeding the proper privilege of a judge in commenting on the unexplained absence of evidence which ought naturally to be in the case.

The next assignment is more serious. The charge that "I need scarcely say to you that it is their (the defendants') duty, and it is the duty of every one who occupies the highway to do so with such care that no injury can happen to any one," imposes a liability far greater than the law sanctions. No degree of care has ever succeeded in altogether avoiding accidents, and the law does not make any one an insurer against them.

The effect of this statement of the law to the jury is unfortunately nowhere cured by an explicit announcement of the true rule; for, though the necessity of proof of negligence of the defendants is stated correctly, the legal standard of negligence is not clearly defined either in connection with the phrase complained of, or elsewhere, in such form as to guide and control the minds of the jury. From the whole tenor of this part of the charge the jury might very probably assume that it was negligence in law not to prevent an accident. This assignment is sustained.

The remaining assignments relate to the charge as to the

measure of the damages, and here too the language used was unfortunate and misleading. ⸱The jury were told, "Now in estimating damages, you are to consider, in a case of this kind only, the pain and suffering of the child in consequence of the injury. There is no rule of law to assist you in arriving at a conclusion. That is a matter entirely for yourselves. He is also entitled to compensation for, first of all, the deformity which, the doctor has said, resulted from this accident. That is a matter, gentlemen, left entirely to your own discretion and judgment. If there is a permanent injury and deformity arising from the accident, then the principal question for you to determine is how far it has injured his earning capacity." This language cannot be said to convey to the unlearned mind the proper rule for the estimation of damages. The law cannot fix amounts, but it has a rule by which they are to be fixed; and, in cases of this kind, where the inherent difficulties of measuring pain and suffering by a money standard are already so great, and the tendency of juries to suppose that they may be generous rather than just, is so strong, it is error not to lay down for the guidance of the jury in the most explicit terms, the limitation of their verdict to compensation and compensation alone.

While this idea was plainly enough in the judge's mind, his language was unfortunately vague and inaccurate, and failed to give the jury that clear guide which in cases of this class is especially needed.

> The judgment is reversed, and venire de novo awarded.