the defaulting cashier of the funds of the bank, in his speculations, coupled with the allegation at folio 21, that "said defendants and said Stevens concealed [thereby implying knowledge of] the fact that he [said Bielby] had been engaged in stock speculations," do not seem to more than state the alleged connection of the defendant Stevens with the same acts in which it is claimed the other defendants participated.

As hereinbefore stated, it is claimed in behalf of two defendants that there are special considerations in favor of sustaining the demurrers interposed in their behalf. Henry Johnson, who was one of the directors during part of the period under investigation, died May 17, 1892, and his executrix is joined as a defendant. It is claimed that this is improper. If, however, the opinions hereinbefore expressed are correct, it would have been proper to join said Johnson, if alive, although he had ceased to be a director, at the date mentioned, by resignation, instead of death. This being so, it seems to me proper to join as a party his executrix, as has been done. It is claimed, in support of the demurrer interposed by the defendant Parry, that there are nowhere in the complaint such allegations with reference to his having been a director in the bank as are found with reference to the other defendants, and no allegations which set forth any cause of action against him. While, very likely, this is the result of inadvertence, I think the claim in behalf of this defendant is well founded, and that there are no proper allegations to connect him with the subject-matter of the suit. In conformity with the foregoing views, formal decisions and interlocutory judgment in the usual form may be prepared, overruling, with costs, the demurrers interposed in behalf of the various defendants, except defendant Parry. and sustaining that, with the usual leave to serve amended pleadings.

Ordered accordingly.

---

ROST v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. December 1, 1896.)

1. DAMAGES—EVIDENCE—EXHIBITING AMPUTATED FOOT.
    In an action for personal injuries it is error to admit the amputated foot of the injured child in evidence to show the size of the child at the time of the injury, where the child was present at the trial, and defendant admits that the foot was properly amputated.

2. SAME—INSTRUCTIONS—AMOUNT OF RECOVERY.
    It is error for the court, in an action for personal injuries, to call the attention of the jury to the amount of the demand in the complaint, and state that they could award no more than the claim, and to charge the jury in such a manner as to authorize them to award the full damages claimed, and to charge that they are to give the full damage that will be adequate to the money loss sustained.

Appeal from trial term, Kings county.

Action by Clara Rost, an infant, etc., by Ernest Rost, her guardian ad litem, against the Brooklyn Heights Railroad Company, for personal injuries. From a judgment entered on a verdict in favor of

plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Thomas S. Moore, for appellant.
Charles J. Patterson, for respondent.

HATCH, J. It is not seriously contended but that the evidence was sufficient to warrant a recovery in plaintiff's favor. The claim is made, however, that defendant has not had a fair trial, in that what transpired thereon had a tendency to unduly create sympathy for the plaintiff, and arouse the passions and prejudices of the jury, leading them, on account thereof, to render a verdict in excess of the pecuniary loss sustained. The evidence disclosed a case harrowing to the feelings in the extreme, and presented a condition where a duty was devolved upon the court to carefully guard the trial, and prevent, so far as possible, the jury from being carried by their feelings away from the questions they were called upon to determine. The plaintiff, a little girl five years and nine months old, was run over by one of defendant's trolley cars, and her left leg was cut off by the wheel of the car. The evidence tended quite strongly to establish that defendant was grossly negligent in the management of the car which ran the child down, and every circumstance connected therewith was quite distressing. We have little difficulty, therefore, in seeing that upon the trial, where were developed all the details of so distressing a case, the emotions of the parents, and the pity excited for the little child, must have created an atmosphere tending to destroy the calm and dispassionate consideration of the real questions involved, and to prevent the jury from exercising that cool and deliberate judgment which should alone find place in a court of justice.

The legal questions involved were the negligence of the defendant, and the freedom therefrom of the injured child or her parents; and, these found in her favor, the measurement of her pecuniary loss. These questions exclude sympathy in their determination, rebuke passion and prejudice, and are to be settled in the cold realm of sober judgment. And if the court can fairly see that this has not been accomplished upon the trial had, or if the things which were done render it probable that injustice has been worked, it becomes the duty of this court to interfere and correct the wrong, even though it be difficult or impossible to lay hand upon specific error, for the object of all trials is the accomplishment of justice. Platt v. Munroe, 34 Barb. 291; Barrett v. Railroad Co., 45 N. Y. 628. And it is the duty of the court, in the disposition of legal controversies, to secure to the parties their legal rights so far as the same may practically be accomplished. Chamberlain v. Lindsay, 1 Hun, 236.

It appeared upon the trial that the foot of the child, which was amputated, had been preserved by the physician in a glass jar. The physician, being upon the stand as a witness, was asked by plaintiff's counsel to produce it. Defendant's counsel thereupon stated that

it was admitted that the child's leg had been amputated, and no claim was made that it was not properly done, and objected to its production. Plaintiff's counsel thereupon stated that the object of its production was "to show the size of the child at the time." Objection was made that the production of the foot was not for any legitimate purpose. This was overruled by the court, and the foot was produced. The physician was then asked by plaintiff if the foot showed any burn on it, and he answered, "It shows the discoloration and blackening that I have spoken of." Being asked if that is the result of a burn, he said, "Part of it, I should think so." To defendant he answered, "I am not certain that it is the result of a burn." Prior to this examination, and before the foot was produced, the witness had stated: "There appeared to be a burn on it. There was a blackening and discoloration at the place of the injury, across the ankle joint. I would not like to say positively that it was a burn, or was not a burn. It simply was blackened and discolored, and may not have been one." This ruling is now sought to be supported upon the ground that the foot was admissible to show the size of the child at the time of the accident, and also that the discoloration upon it had a tendency to establish that the electrical current had not been shut off at the time the child was run over, and therefore bore directly upon the negligence of the defendant in the operation of the car. It is the undoubted rule that the exhibition of an injury or an injured member of the body to the jury is proper where it is the subject of examination, when such exhibition is necessary to enable the jury to understand the circumstances surrounding the injury, or to obtain a more comprehensive and intelligent conception of the conditions which existed when the injury was received, or of the character of the injury itself. But where such exhibition is not essential or necessary to enable the jury to better understand the conditions, or where the jury may be led to illegitimate considerations on account of it, then it may become improper. Upon the trial of this case the child was present in the view of the jury. They could judge of her size at the time of the accident from that observation quite as well as they could determine her size from the appearance of this foot which had been preserved. That it would have undergone some change, we can readily perceive, and the jury could receive little, if any, aid in that direction. What her size was at the time was comparatively of little importance in the determination of any issue which the case presented. Whatever the discoloration was upon the foot, whether from a burn or other causes, it had been fully described by the physician, and there was not a pretense that his testimony in this regard was to be controverted. Nor does it appear that the appearance of the discoloration upon the foot aided the jury to a determination of the question of defendant's negligence in the slightest degree beyond what they obtained from the description given of it by the physician. So far as the suggestion is concerned that the denials in the answer of amputation and burns warranted the exhibition, it appears that the defendant admitted the amputation before the foot was produced, and, as before remarked, the testimony of the physician was not expected to be controverted. It may,

however, be assumed that technically the rule of evidence authorized the exhibition of the foot. Such rule, however, is without force when the legitimate purpose for which the exhibit may be made is slight, and the strong tendency is to work improper and illegitimate results. It is perfectly clear in the present case that the direct tendency of the exhibition of this mangled foot, coupled with the other considerations already noted, was to arouse the prejudice and inflame the passions of the jury into an angry resentment against the author of the misfortune. This condition far overbalanced any legitimate purpose for which the exhibit might have been made, and made the exhibition of this foot, under the circumstances of this case improper.

Upon the subject of damages the court charged the jury:

"Sixty thousand dollars has been claimed in the complaint. You cannot give any more than that. You will not give any more to this plaintiff because this defendant is a corporation, nor will you give any less because it is a corporation. You will not give anything to this plaintiff out of pure sympathy, either by way of giving her a verdict at all or by way of increasing the amount, because of sympathy alone. By that I do not mean to say that you are to harden your hearts, and to be unkind and unfeeling, because nothing of that kind is required of you; but I want to impress upon you that your duty is, under the law, to give only the pecuniary damages sustained by reason of this hurt, if you decide to give her anything. * * * You will give her whatever you find that damage has been. If you decide to give her anything, to the full amount, without any reservation, giving her all that she is entitled to by way of compensation for the pecuniary or money loss she has sustained by reason of the hurt that has come to her."

At the close of the charge the following colloquy took place:

"Mr. Moore: I except to one part of your honor's charge. Your honor said that if the jury give damages they are to give the full, to the utmost, any damage she has received. I except to that. The Court: I did not mean to say more than to give the full pecuniary damage,—the full money loss sustained. I did not understand that I said anything that was liable to any criticism. Mr. Moore: I think the rule is that it should be fair pecuniary compensation. The Court: I think they can give full pecuniary compensation. Mr. Patterson: All they can give is an adequate compensation for the injury which this plaintiff has sustained. The Court: Well, if you wish it that way, I will make that the phraseology. Mr. Moore: It is either the rule of law or not the rule of law. The Court: What I mean to say is that they are to give the full damages that will be adequate to the money loss sustained by this child by reason of the hurt. (Exception by defendant.)"

The tendency of juries to award a verdict for the plaintiff with large damages in this class of cases is as well established as any fact can be, and it is quite proper for courts, in view of this condition, to caution juries in restraint of the tendency. Frequent embarrassment is found in sustaining for the full amount verdicts in negligence cases upon any fair construction of the evidence. The charge in this case authorized the jury to award damages to the full amount claimed, $60,000, and nowhere is the charge in this respect qualified. The final charge of the court is, after the colloquy with counsel, that the jury should give to the full damages that will be adequate to the money loss sustained, and the only limitation which the court placed upon what would be the full and adequate money loss was the sum demanded in the complaint. By calling attention to the amount of the demand in the complaint, and accompanying it by the statement

that they could award no more, it left the jury at liberty to award that sum.    The rule of law upon which the damages were to be measured was correctly stated by plaintiff's counsel,—that they should be adequate compensation for the injury.    The learned judge emphasized this by the statement that the jury could give full damages adequate to the money loss.    Without passing upon the question whether technical error was committed in the charge which was the subject of exception, we are of opinion that the charge as a whole conveyed to the jury a wrong impression as to the extent of what would be adequate compensation, which may have led them to award the very large verdict which they did,—a verdict which seems excessive in amount, based upon any fair construction of the evidence. Upon the whole case we are satisfied that this verdict may have, and quite likely did, proceed from other considerations than those presented by the testimony, and that justice requires the ordering of a new trial.

The judgment should therefore be reversed, and a new trial granted, with costs to abide the event.    All concur, except BRADLEY, J., who concurs in the result.