17870

Theresa HARPER, Respondent, v. Pattie Vaughan BOLTON, Appellant

(124 S. E. (2d) 54)

542

*Messrs. Nelson, Mullins, Grier & Scarborough,* of Columbia, *for Appellant,*

*Messrs. Cooper & Gary* and *William A. Dallis,* of Columbia, and *James D. Gilliland,* of Warrenton, N. C., *for Respondent,*

February 7, 1962.

Rehearing Denied February 26, 1962.

Moss, Justice.

Theresa Harper, the respondent herein, instituted this action against Pattie Vaughan Bolton, the appellant herein, and M. T. Bolton, and Isaac Harris, Jr., to recover damages for personal injuries suffered by her in an automobile accident which occurred on November 21, 1958, when the automobile operated by the appellant, and in which the respondent was riding as a passenger, was in collision with an automobile operated by Isaac Harris, Jr. It appears from the record that the said Harris defaulted, and M. T. Bolton was eliminated from the case by a directed verdict.

The case was tried before the Honorable James Hugh McFaddin, and a jury, at the 1959 November Term of the Court of Common Pleas for Richland County, South Carolina, and resulted in a verdict for actual damages in favor of the respondent. At appropriate stages of the trial the appellant made motions for a nonsuit and a directed verdict in her favor. These were refused. After the rendition of a verdict in favor of the respondent, the appellant made motions for judgment *non obstante veredicto,* and in the alternative, for a new trial. Both of said motions were refused by the trial Judge. The appellant does not appeal from the refusal of her motions for a nonsuit, directed verdict and judgment *non obstante veredicto,* but does appeal from the trial Judge's refusal of her motion for a new trial and from the judgment entered on the verdict of the jury.

It is conclusive from the evidence that the respondent suffered an injury to her left eye, necessitating its removal. The eye so removed was preserved in alcohol, and upon the trial of the case, over the objection of the appellant, the glass vial containing said eye was offered in evidence.

It further appears that one of the attorneys for the respondent, while addressing the jury, and over the objection

of the appellant, "was permitted to endorse on a blackboard his own opinion as to the *per diem* value of pain and suffering."

The first question for determination is whether the trial Judge committed error in admitting in evidence, over the objection of the appellant, the glass vial containing the removed and preserved eye of the respondent. In this connection the appellant asserts that there was no question under the evidence but that the eye of the respondent was lost as a result of her injury. It is further contended that it was not necessary to admit the removed eye in evidence for the purpose of proving a disputed fact in the case. The record shows that the surgeon who removed the eye of the respondent was sworn as a witness. He testified that because of the severe nature of the injury to the eye of the respondent it was necessary to remove it. This witness produced a small glass vial containing the removed eye of the respondent and upon the offer of such vial in evidence, counsel for the appellant stated, "I don't know of its relevancy, your Honor. There is no question but that the eye was removed." The attention of the court was then directed to the answer of the appellant which alleged that the respondent received some injury in the accident but there was a denial of the nature and the extent of said injury. To this argument, counsel for the appellant replied, "Well, I think they have established that, your Honor. The doctor just testified to it. There has been testimony here that the eye was removed." Thereupon, the trial Judge asked counsel for the appellant if he admitted that the eye was removed, and the reply was, "From what the doctor has said, I don't think there can be any doubt about it", and, "If the doctor testified to that, I do admit it."

We think no other conclusion can be reached than that counsel for the appellant unqualifiedly admitted that the eye of the respondent had been necessarily removed because of the injury to such eye. In the course of the discussion as to the admissibility of the removed eye, counsel for the appel-

lant three times said that there was no question but that the eye had been removed.

Evidence is offered for the purpose of proving the ▌ existence or nonexistence of some matter of fact. We so held in *State v. Heavener,* 146 S. C. 138, 143 S. E. 674. It would have been proper to admit into evidence the removed eye of the respondent if such had been made for the purpose of proving some disputed or controverted fact in issue. Here, there was no issue as to the removal of respondent's eye.

In the case of *Johnston v. Selfe,* 190 Minn. 269, 251 N. W. 525, it was held that it was not error to admit in evidence fragments of bone from the plaintiff's skull, where there was a controversy as to the character of the injury to the head.

In the case of *Nebonne v. Concord R. R.,* 68 N. H. 296, 44 A. 521, the toes of the plaintiff necessarily amputated in consequence of an accident were exhibited to a jury, over the objection of the defendant. The court held that the exhibition of the amputated toes to the jury was proper under the facts, but if the offer to exhibit the toes was not made for the purpose of proving some disputed fact material to the issue, the exhibition should not have been allowed.

In the case of *Evans v. Chicago, M. & St. P. R. Co.,* 133 Minn. 293, 158 N. W. 335, the court held that where the amputated hand of the plaintiff, which had been preserved, was offered in evidence for the purpose of showing damages and pain and suffering, and upon no other issue, the court did not err in excluding it.

In *Rost v. Brooklyn Heights R. Co.,* 10 App. Div. ▌ 477, 41 N. Y. S. 1069, where a small child's foot had been run over by an electric car, the display of the amputated foot to show the size of the child at the time of the injury was held error, the child being present at the trial, and the defendant admitting that the foot had been amputated. The court conceded that it is the undoubted rule

that the exhibition of an injury or an injured member of the body to the jury is proper where it is the subject of examination, if such exhibition is necessary to enable the jury to understand the circumstances surrounding the injury, or to obtain a more comprehensive and intelligent conception of the conditions which existed when the injury was received, or of the character of the injury itself, but stated that where such exhibition is not essential or necessary to enable the jury to better understand the conditions, or where the jury may be led to illegitimate considerations on account of it, then it may become improper. We quote the following from this case:

"It is perfectly clear in the present case that the direct tendency of the exhibition of this mangled foot, coupled with the other considerations already noted, was to arouse the prejudice and inflame the passions of the jury into an angry resentment against the author of the misfortune. This condition far overbalanced any legitimate purpose for which the exhibit might have been made, and made the exhibition of this foot, under the circumstances of this case, improper."

The exhibition of injuries should not be permitted where such will not tend to throw any light on any issue in the case nor should an exhibition be permitted where it is apparently designed merely to excite pity and commiseration. 32 C. J. S., Evidence, § 610, at page 461. See also the annotation in 66 A. L. R. (2d), at page 1367, which cites a number of cases as to the propriety of permitting a plaintiff in a personal injury action to exhibit amputated limbs or other separated parts of the body to the jury.

The exhibition of the enucleated eye of the respondent did not tend to throw any light on any issue in this case. We think the trial Judge committed error in permitting the introduction of the removed and preserved eye.

The only other question for determination is whether the trial Judge committed error in permitting one of the attorneys for the respondent, while addressing the jury and

over the objection of the appellant, to endorse on a black-board his own opinion as to the *per diem* value which the jury should award to the respondent for her pain and suffering.

The question here involved does not relate to the propriety of counsel's use of a blackboard, during his argument to the jury, for the purpose of fairly illustrating points that are properly arguable, or bringing to the attention of the jury, facts or figures properly revealed by the evidence. In the case of *Johnson v. Charleston & W. C. Ry. Co.,* 234 S. C. 448, 108 S. E. (2d) 777, we said:

"There is no impropriety in counsel's use of a blackboard, during his argument to the jury, for the purpose of fairly illustrating points that are properly arguable. 53 Am. Jur., Trial, Section 490; 88 C. J. S., Trial, § 177; *Lauderdale County Cooperative v. Lansdell,* 263 Ala. 557, 83 So. (2d) 201; *Nehi Bottling Co. of Ellisville v. Jefferson,* 226 Miss. 586, 84 So. (2d) 684; Annotation: 44 A. L. R. (2d) 1205. Calculations made, or diagrams drawn, thereon are of course not evidence. Like statements of counsel in oral argument, they should have reasonable foundation in the evidence or in inferences fairly arguable from the evidence. Just as oral argument may be abused, so may such visual argument; and its abuse may be so flagrant as to require a new trial. Control of the arguments of counsel, with regard to the use of such visual aids, as with regard to oral statements, rests in the sound discretion of the trial judge. *Johnson v. Life Insurance Co. of Georgia,* 227 S. C. 351, 88 S. E. (2d) 260, 55 A. L. R. (2d) 813; *Andrews v. Cardosa,* Fla. App., 97 So. (2d) 43; *Miller v. Loy,* 101 Ohio App. 405, 140 N. E. (2d) 38."

Pain and suffering is recognized by the Courts of this State as a very material element of damages on which a recovery may be bottomed. *Campbell v. Hall et al.,* 210 S. C. 423, 43 S. E. (2d) 129. Damages for pain and suffering are unliquidated and indeterminate in charac-

ter and the assessment of unliquidated damages must rest in the sound discretion of the jury, controlled by the discretionary power of the trial Judge. *Wright v. Gilbert et al.,* 227 S. C. 334, 88 S. E. (2d) 72. Pain and suffering have no market price. They are not capable of being exactly and accurately determined, and there is no fixed rule or standard whereby damages for them can be measured. Hence, the amount of damages to be awarded for pain and suffering must be left to the judgment of the jury, subject only to correction by the courts for abuse.

It is an admitted fact in this case that one of the attorneys for the respondent was permitted to endorse on a blackboard his own personal opinion as to the *per diem* value of pain and suffering. There was no evidence in the record to support the attorney's opinion as to the *per diem* value thereof.

There is no uniformity in the decisions of the different courts as to whether the permitting of the mathematical formula argument constitutes error. The appellant asserts that it does and calls our attention to an annotation in 60 A. L. R. (2d), at page 1347, from which it appears that in a number of jurisdictions the courts refused to permit counsel, in personal injury suits, to suggest monetary mathematical formulas to the jury for the computation of compensation for pain and suffering. These courts say that such suggestions have no foundation in the evidence, and import into the trial elements of sheer speculation on a matter which by universal understanding is not susceptible of evaluation on any such basis and constitute an unwarranted intrusion into the domain of the jury. *Indemnity Insurance Company of North America v. Odom,* 237 S. C. 167, 116 S. E. (2d) 22.

The case of *Certified T. V. and Appliance Co. v. Harrington,* 201 Va. 109, 109 S. E. (2d) 126, was an action for injuries sustained by the plaintiff. In the trial there was objection made to the use by plaintiff's counsel of a mathematical

formula for measuring and awarding damages for pain and suffering, mental anguish and percentage of disability on a *per diem* basis. In reversing the decision of the lower court, the Virginia court said:

"It has been repeatedly held in Virginia and in other jurisdictions that there is no fixed rule or yardstick by which to measure with mathematical precision the definite amount of damages for physical pain, suffering and mental anguish endured in personal injury cases. It is within the sound discretion of the jury to determine from the evidence what is fair and reasonable compensation, and a verdict of the jury will not be disturbed unless it appears that it was influenced by partiality, prejudice, corruption of the jury, or by some mistaken view of the evidence. *Lilley v. Simmons,* 200 Va. 791, 108 S. E. (2d) 245; *Williams Paving Co., Inc. v. Kreidl,* 200 Va. 196, 204, 104 S. E. (2d) 758, 764; *National Fruit Product Co., Inc. v. Wagner,* 185 Va. 38, 40, 37 S. E. (2d) 757, 758; *Simmons v. Boyd,* 199 Va. 806, 811, 102 S. E. (2d) 292, 295; 5 Mich. Jur., Damages, § 30, p. 520; 25 C. J. S., Damages, § 196, p. 910; 15 Am. Jur., Damages, § 71, p. 479.

"To permit plaintiff's counsel to suggest and argue to the jury an amount to be allowed for pain, suffering, mental anguish and disability calculated on a daily or other fixed basis, allows him to invade the province of the jury and to get before it what does not appear in the evidence. Since an expert witness would not be permitted to testify as to the market value of pain and suffering, which differs in individuals and the degree thereof may vary from day to day, certainly there is all the more reason for counsel not to do so. The estimates of counsel may tend to instill in the minds of the jurors impressions not founded on the evidence. Verdicts should be based on deductions drawn by the jury from the evidence presented and not the mere adoption of calculations submitted by counsel.

"We are of opinion that the use by plaintiff's counsel of a mathematical formula setting forth on a blackboard the claim

of pain, suffering, mental anguish, and the percentage of disability suggested by him on a *per diem* or other fixed basis, was speculation of counsel unsupported by evidence, amounting to his giving testimony in his summation argument, and that it was improper and constituted error. *Henne v. Balick,* Del. 1958, [1 Storey 369, 51 Del. 369] 146 A. (2d) 394, 398; *Botta v. Brunner,* 1958, 26 N. J. 82, 138 A. (2d) 713, 60 A. L. R. (2d) 1331, 1334, 1345, 1346; *Herb v. Hallowell,* 304 Pa. 128, 154 A. 582, 85 A. L. R. 1004; *Vaughan v. Magee,* 3 Cir., 218 F. 630; *Goodhart v. Pennsylvania R. Co.,* 177 Pa. 1, 35 A. 191."

There are other cases supporting the holding in the *Certified T. V. and Appliance Company case. King v. Railway Express Agency, Inc.,* N. D., 107 N. W. (2d) 509; *Affett v. Milwaukee & Suburban Transport Corp.,* 11 Wis. (2d) 604, 106 N. W. (2d) 274; *Faught v. Washam,* Mo., 329 S. W. (2d) 588, and *Crum v. Ward,* W. Va., 122 S. E. (2d) 18. We quote the following from the last cited case:

"In our view, the mathematical formula argument is based wholly on speculation, or imaginary inferences, not supported by facts, in reality by supposed facts which could not be received in evidence if offered. No effort, perhaps, would succeed in pointing out the almost innumerable variables necessarily existing or involved in such speculation. For illustration, however, it may be suggested that any attempt to place a money value on pain for any definite unit of time is impossible of any sound basis, for no two persons, it is believed, bear the same sensitivity to pain. The severity or duration of pain, though resulting from the same cause, varies as to different individuals so greatly that the most experienced and learned physician finds no method of measuring it, but, to a very large extent, must rely on representations of the patient. * * *"

In allowing counsel for the respondent to endorse on a blackboard his own opinion as to the *per diem* value of pain and suffering was to permit him to make an argument that

had no foundation whatever in the evidence. Though wide latitude and freedom of counsel in arguments to the jury are and ought to be allowed, such arguments cannot be based on facts not in the record, or inferences based on or drawn from facts which are not even admissible in evidence.

We think the doctrine announced in the *Certified T. V. and Appliance Company case, supra,* is sound and we adhere thereto.

Hence, we conclude that it was error for the trial judge to permit counsel for the respondent to endorse on a blackboard his own personal opinion as to the *per diem* value of pain and suffering.

The judgment of the lower court is reversed and this case remanded for a new trial.

TAYLOR, C. J., and OXNER, J., concur, and LEWIS, J., concurs in result.

BUSSEY, J., dissents.

BUSSEY, Justice (dissenting).

As I feel that the judgment of the Court of Common Pleas for Richland County herein was free from prejudical error, I dissent from the decision of the majority of this Court to reverse that judgment and remand the case for a new trial.

There are only two exceptions before this Court; the first contends that there was error on the part of the trial judge in formally admitting into evidence the small vial containing the eye of the respondent which was removed; the second contends that there was error in permitting "plaintiff's counsel, over objection, to endorse on a blackboard his own opinion as to the *per diem* value of pain and suffering, and to insert same in a formula, while addressing the jury." There is no contention before this Court that the verdict was either excessive or unsupported by the evidence.

To bring the two exceptions into proper perspective before discussing the same, it must be borne in mind that the

burden is upon the appellant to not only show error, but that the error was prejudicial. *Cook v. Atlantic Coast Line R. Co.,* 196 S. C. 230, 13 S. E. (2d) 1, 133 A. L. R. 1144. *Federal Land Bank of Columbia v. Summer et al.,* 168 S. C. 510, 167 S. E. 830.

With respect to the first exception, the trial judge's exercise of his sound discretion in the conduct of a trial, including admission and rejection of testimony, will not be disturbed by the Supreme Court on appeal, in the absence of a showing of abuse of such discretion, commission of legal error in its exercise and resulting prejudice to appellant's rights. *James v. Atlantic Coast Line R. Co.,* 199 S. C. 45, 18 S. E. (2d) 616.

To justify a reversal because of a ruling as to evidence, it must be made to appear not only that the ruling was erroneous, but also that it was material and prejudicial, amounting to a denial of some substantial right. *Gaskins v. Firemen's Ins. Co. of Newark, N. J.,* 206 S. C. 213, 33 S. E. (2d) 498.

I do not differ with the authorities cited in the majority opinion with respect to the propriety or impropriety of admitting the vial into evidence and I fully agree with the statement in the majority opinion to the effect that, it would be proper to admit into evidence the removed eye of the respondent if such were offered for the purpose of proving some disputed or controverted fact at issue. The question here is not what is the applicable, correct rule of law, but whether the trial court erred in its ruling under the applicable law.

In the course of direct examination of Dr. Dunn the following evidence was offered:

"Q. Incidentally, do you happen to have the eye?

"A. Yes, I do.

"Q. Will you let me have it, please?

"A. (Witness hands small vial containing human eye to Mr. Dallis.)

"Q. That is the eye that you removed from Theresa Harper?

"A. From Theresa Harper, yes.

"Mr. Dallis: We would like to offer this in evidence, if the Court pleases."

Until the eye was actually offered in evidence, no objection was made, but Mr. Nelson, attorney for the appellant, then said:

"Mr. Nelson: I don't know of its relevancy, your Honor. There is no question but that the eye was removed."

Following this objection, counsel for respondent explained to the court that the eye was being offered because the answer of the appellants denied the extent of the injuries, allegedly sustained by the respondent, and demanded strict proof thereof, in response to which Mr. Nelson said: "Well, *I think they have established that, your Honor. The doctor testified to it. There has been testimony here that the eye was removed.* * * *" (Emphasis added.)

Thus it will be seen that counsel for the appellant, in the course of and as a part of his objection made the statement that there was no question but that the eye was removed, which statement was in conflict with his pleadings, and when this conflict was called to the attention of the court, counsel was prepared to make only a qualified admission. The mere fact that there had been testimony to the effect that the eye was removed was not an admission on the part of the appellant that such was the case and did not preclude the appellant, if so minded, from offering evidence later in the trial to the effect that the eye was not removed. The record, to my mind, clearly shows that the trial judge earnestly sought to obtain from counsel for the appellant an unqualified admission that the eye was, in point of fact, removed, to the end that the removal or nonremoval of the eye would no longer be an issue in the case, which unqualified admission was needed to justify the judge in excluding the vial from evidence. The following excerpt from the record clear-

ly attests that his Honor's correct effort in this respect was unavailing.

"The Court: Do you admit in open court that the eye was removed?

"Mr. Nelson: From what the doctor has said, *I don't think there can be any doubt about it.*

"The Court: No, sir, I asked you if you admit that.

"Mr. Nelson: *If the doctor testified to that,* I do admit it.

"The Court: We will receive the eye in evidence." (Emphasis added.)

Of course, the intonation of counsel's voice may well have rendered his answers even more equivocal than would readily appear from the record. Be that as it may, it appears to me that the trial judge very correctly endeavored to apply the applicable principles of law, and, in his effort, was not met with any degree of cooperation by counsel. If counsel had no intention of contesting the issue of the removal or nonremoval of the eye and considered the introduction of the vial prejudicial to his client, all he had to do was to make a flat unequivocal admission for the record, when first requested to do so by the judge, instead of quibbling as he did. I do not think there was any error on the part of the judge, but even if there were error, the error was invited, provoked and contributed to by counsel for appellant, and this being the case, appellant should not now be heard to complain.

There being no issue of excessiveness before us and the record here not containing any evidence on the issue of liability, which may be clear-cut as far as we know, I conclude that the appellant has not sustained the burden of showing prejudice, even if there was error.

In his order the trial judge said: "The eye was never exhibited to the jury, nor did the jury take this exhibit into the jury room during their deliberation." The correctness of this statement by the trial judge it not challenged by the appellant. Moreover, it appears that if the vial was ever even

distantly within sight of the jury, such occurred when the same was being discussed by the doctor and counsel and being handed by the doctor to counsel, during which there was no objection on the part of the appellant, the objection coming only when the vial was offered in evidence as an exhibit.

With respect to the second exception, the record discloses only that respondent's counsel was permitted "over objection, to endorse on a blackboard his own opinion as to the *per diem* value of pain and suffering and to insert same in a formula, while addressing the jury." None of the details of counsel's argument are given and this exception could well be disposed of by simply holding that the appellant has failed to sustain the burden of showing that the appellant was in anywise prejudiced by the ruling of the trial judge with respect to argument of respondent's counsel. I, personally, do not think there was any error, but even if it be conceded that there was error, no prejudice is shown, it being again pointed out that no issue as to the amount of the verdict is before this court. I do not believe that we should infer or presume prejudice from an argument which is not fully disclosed by the record.

The specific question of whether the use of a mathematical formula, based upon a time-segment, in the argument of counsel with respect to damages for pain and suffering, is permissible in this State has not been passed upon by this Court. Since, in my view, the appeal in this case could be correctly disposed of as above set forth, I see no need or reason for the court to pass upon such question in this case and I do not feel that we should do so, particularly in view of the very inadequate record before us. However, as the majority opinion does pass upon this question, I shall state my dissenting views thereabout, as I sincerely believe that the holding of the majority with respect to this particular question is unsound and in conflict with previous decisions of this Court.

The majority opinion adopts and adheres to the doctrine announced in the case of *Certified T. V. and Appliance Co. v. Harrington,* 201 Va. 109, 109 S. E. (2d) 126. As will hereinafter be pointed out, the cited case is in accord with what is decidedly the minority view in the United States, there being a wealth of well reasoned decisions to the contrary and, moreover, in my view, the said decision is in direct conflict with our case of *Johnson v. Charleston and Western Carolina Ry. Co.,* 234 S. C. 448, 108 S. E. (2d) 777, even though the specific question was not passed upon in that case.

The exception here does not question the use of the blackboard by counsel but questions counsel's expression of his own opinion of value and the use of a mathematical formula in conection with damages for pain and suffering. The cited *Virginia case* and other cases following the minority rule on this question rest principally on the contention that, since there is no market price for pain and suffering which could be testified to, the statements of counsel in such an argument, in effect, become testimony.

This court, with respect to counsel's use of the blackboard in the *Johnson case, supra,* said: "Calculations made, or diagrams drawn, thereon *are of course not evidence.* Like statements of counsel in oral argument, they should have reasonable foundation in the evidence or in *inferences* fairly arguable from the evidence." (Emphasis added.)

There is ample authority in this State, and most other jurisdictions, for the proposition that an opinion of counsel based on the evidence is permissible in argument. An opinion is nothing more than the end result of an inference. In Webster's New International Dictionary, "inference" is defined as "Act or process of inferring; the act of passing from one judgment to another or from a belief or cognition to a judgment. 2. that which is inferred; a truth or proposition drawn from another which is admitted or supposed to be true; a conclusion; a deduction."

"Opinion", *inter alia,* is defined as: "A notion or conviction founded on probable evidence; a belief; a view, a judgment."

"Conclusion" is defined, *inter alia,* as: "An inference; a reasoned judgment or an expression of one."

53 Am. Jur. 391, Trial, Sec. 485, contains the following:

"* * * Where there is some evidence before the court from which facts stated by counsel in argument can be inferred, he is justified in making such inferences although the evidence by which they are sought to be maintained is not strong or clear * * *. It is entirely legitimate for counsel to review the evidence and to suggest to the jury what, under the proof, their general verdict should be, * * *. *Likewise, there is no objection to statements by counsel, in argument, as to what, under the evidence, he considers a fair compensation for injuries received.* He may also properly comment on the fact that the amount of damages claimed considering the character of the injury, is exorbitant." (Emphasis added.)

"Counsel may state and comment on all proper inferences from the evidence, and a great variety of particular deductions and inferences have been held proper or not error in the light of the particular facts of the case. Counsel is allowed much latitude in drawing and arguing inferences from the evidence; he may draw conclusions from the evidence on his own system of reasoning, although such inferences as stated by counsel are inconclusive, improbable, illogical, erroneous, or even absurd, unless such conclusions are couched in language transcending the bounds of legitimate argument * * *." 88 C. J. S., Trial, § 181.

If there be any doubt that it is perfectly proper for counsel, in argument, to state his opinion based upon the evidence in the case, reference may be had to the case of *State v. Jernigan,* 156 S. C. 509, 153 S. E. 480, wherein this Court held that it was perfectly proper for a solicitor to express his opinion as to the guilt of the accused.

In *State v. Strickland,* 147 S. C. 514, 145 S. E. 404, this Court held that the solicitor's remarks, in argument, to the jury that he had never in all his experience seen a stronger case of murder than was borne out by the facts in the instant case, were not reversible error.

There is no doubt that in the case before us there was evidence of pain and suffering on the part of the respondent, and that counsel's opinion as to the value thereof was nothing more than an inference drawn by counsel, in argument, from the evidence as to the extent, degree and duration of such pain and suffering, and under our decision in the *Johnson case* was not evidence but something that he was clearly entitled to express either orally or on the blackboard.

Since it is clear that in this State counsel has the right, in argument, to express his opinion based upon the evidence as to an ultimate fact to be determined solely by the jury in its province, here the value of pain and suffering proved to have been endured by the respondent, it becomes clear that the cited *Virginia case* is in direct conflict with the law of this State. It is further apparent that there is no possible merit in appellant's second exception, unless it be contended that it was error for counsel to express his opinion in terms of a *per diem* value, used in a formula, rather than in terms of a lump sum value.

The use in argument of a mathematical formula with respect to pain and suffering has been the subject of discussion in many court opinions and articles in many law reviews of recognized standing in legal circles. The unsound and fallacious reasoning upon which the Virginia minority rule is based may not be readily apparent without considerable research and particularly examination of the authorities cited in the *Certified T. V. and Appliance Co. case, supra,* wherein the minority rule was evolved.

Courts and other authorities seem to recognize *Botta v. Brunner,* 26 N. J. 82, 138 A. (2d) 713, 68 A. L. R. (2d) 1331, as the leading case in support of the minor-

ity rule. Prior to the decision in the *Botta case,* it was permissible in New Jersey for plaintiff's counsel to refer to the *ad damnum* clause of the complaint in argument. Also, there was apparently, very little, if any, authority from any jurisdiction which firmly and explicitly supported the rule laid down in the *Botta case*. In the State of Pennsylvania, however, for many years prior to the decision of the *Botta case,* it was not permissible for counsel in argument to refer to the *ad damnum* clause. The New Jersey court cites numerous Pennsylvania cases and numerous other cases dealing principally with damages for pain and suffering, rather than *per diem* or other time-segment mathematical formulas, and then, realizing that its decision would conflict with the established law of New Jersey unless it overruled a long line of decisions to the effect that the *ad damnum* clause in New Jersey could be referred to in argument, proceeded to expressly overrule all such decisions. A careful analysis of this decision and the authorities cited therein will show the frail foundation of this decision, which has now been, it seems to me, unquestioningly followed by several jurisdictions, including the State of Virginia. In at least some of these cases, the opinions do not reflect that the courts have carefully examined the source of what is now the minority rule.

The most recent State to follow the minority rule is West Virginia in the case of *Crum v. Ward,* W. Va:, 122 S. E. (2d) 18, wherein, by a three-two majority, the court rejected the majority rule and applied the minority rule, but apparently limited its effect to the particular case. The majority opinion contained this language:

"* * * have reached the conclusion that insofar as the instant case is concerned, the argument complained of constituted prejudicial error for which the judgment complained of must be reversed."

The majority opinion in that case seems to be based on the theory or belief that mathematical formula arguments were

improper because they unduly appealed to the sympathy, prejudice and compassion of the jury. It is difficult to conceive of any realistic basis upon which it would be contended that an argument about money could appeal to the sympathy of a jury more than the testimony of the witnesses as to the extent and duration of the pain and suffering actually endured or to be endured.

President Judge Haymond of the West Virginia Court pointed out in a dissenting opinion the fallacies contained in most of the opinions in the United States which have followed in whole or in part the minority rule. His opinion is commended to the reading of anyone who wishes a panoramic view of both the majority and minority rules and the development of same, all of which are discussed at considerable length and with a great deal of persuasiveness in favor of the majority rule.

The following excerpts are quoted from the opinion of Judge Haymond:

"It is true, as indicated by the majority opinion, that this particular type of argument of counsel has not been specifically considered and passed upon by this Court in any of its prior decisions. The identical question concerning such argument of counsel, however, has been considered and determined in numerous decisions of appellate courts in other jurisdictions and, though those decisions are conflicting, it is my belief that the better considered cases involving the use in the argument of counsel of a mathematical or *per diem* formula, or other fixed method, to assist the jury in determining fair and reasonable compensation for pain and suffering, negligently inflicted, as an element of damages, sanction the use of such formula or method, and that its use is sustained and regarded as proper by the decided weight of judicial authority. *Ratner v. Arrington,* District Court of Appeals of Florida, Third District, 111 So. (2d) 82; *Clark v. Hudson,* 265 Ala. 630, 93 So. (2d) 133 [138]; *McLaney v. Turner,* 267 Ala. 588, 104 So. (2d) 315; *Louisville and*

*Nashville Railroad Company v. Mattingly, Ky.,* 339 S. W. (2d) 155; *Four-County Electric Power Association v. Clardy,* 221 Miss. 403, 73 So. (2d) 144, 44 A. L. R. (2d) 1191; *Arnold v. Ellis,* 231 Miss. 757, 97 So. (2d) 744; *Boutang v. Twin City Motor Bus Company,* 248 Minn. 240, 80 N. W. (2d) 30; *Flaherty v. Minneapolis & St. Louis Railway Company,* 251 Minn. 345, 87 N. W. (2d) 633; *Johnson v. Brown,* 75 Nev. 437, 345 P. (2d) 754; *Missouri-Kansas-Texas Railroad Company v. Jones,* Okla., 354 P. (2d) 415; *A. B. C. Storage and Moving Company, Inc. v. Herron,* Tex. Civ. App., 138 S. W. (2d) 211; *J. D. Wright and Son Truck Line v. Chandler,* Tex. Civ. App., 231 S. W. (2d) 786; *Continental Bus System, Inc. v. Toombs,* Tex. Civ. App., 325 S. W. (2d) 153; *Olsen v. Preferred Risk Mutual Insurance Company,* 11 Utah (2d) 23, 354 P. (2d) 575; *Jones v. Hogan,* 56 Wash. (2d) 23, 351 P. (2d) 153; *Imperial Oil, Limited v. Drlik,* 234 F. (2d) 4, 6th Circuit, certiorari denied, 352 U. S. 941, 77 S. Ct. 261, 1 L. Ed. (2d) 236. The practice is also approved by the authors of numerous articles in law reviews of recognized standing in legal circles. 43 Minn. Law Rev. 832; 38 N. C. L. Rev. 289; 33 S. C. L. Q. 24. * * *

"The main reasons given in the cases which disallow and reject the use of a mathematical or *per diem* formula in connection with pain and suffering in the argument of counsel, and particularly in *Botta v. Brunner,* 26 N. J. 82, 138 A. (2d) 713, 60 A. L. R. (2d) 1331, and in *Certified T. V. and Appliance Company v. Harrington,* 201 Va. 109, 109 S. E. (2d) 126, relied on strongly in the majority opinion, are that the statements of counsel in such argument in effect become testimony; that there is no evidence on which to base such argument because no witness can fix an amount of compensation for pain and suffering; and that such argument is based upon speculation. In my judgment each of these reasons is utterly unsound and fallacious.

"The contention that the statements of counsel are in effect testimony or evidence simply ignores reality and

would substitute for it a figment of the imagination. Every trial judge knows, as every trial lawyer knows, and every appellate court judge should know, that the statements of counsel in an argument are not evidence but are merely the expression of his individual views, and that jurors almost without exception during the trial of a case are so informed or instructed by counsel and the court. Surely it cannot be successfully asserted that the average jury is so stupid as to believe that counsel as a partisan advocate, in arguing the cause of his client, is giving testimony or acting in the capacity of a sworn witness. Jurors observe and know how a person becomes a witness and how he presents sworn evidence in the trial of a case. To say that the statements of counsel are considered as evidence by the jury is a manifest misstatement which distorts the facts.

"The contention that such argument of counsel is not based on the evidence, because no witness can testify as to the amount of compensation for pain and suffering is also entirely devoid of merit and substitutes fiction for fact. Generally, and in the case at bar, the existence, the degree and the duration of pain and suffering of the plaintiff are clearly established by competent evidence; and to say that there is no evidence on which to base an inference by counsel as to the amount of compensation which in his opinion the jury should award is also to substitute fiction for fact and to ignore reality. Of course, no witness can express an opinion as to the amount which should be awarded for pain and suffering; but the absence of testimony of that character has nothing to do with the right of counsel to discuss the evidence of pain and suffering and draw and present to the jury his inferences from such evidence. It is just as certain that no witness can testify that in his opinion a defendant is negligent. All he can do is to testify to the facts within his knowledge; and whether a defendant is guilty of negligence is to be determined by the court or the jury as a trier of fact just as the amount of the items of unliquidated damages, despite any statements of counsel, is to be determined

by the jury which alone possesses that right. I cannot, however, believe that even the authorities which condemn the use in the argument of counsel of a mathematical or *per diem* formula of ascertaining damages for pain and suffering would consider improper and disapprove argument of counsel in which he gives expression to his inferences from the evidence that the defendant was guilty of negligence or that such authorities would refuse to permit counsel to quote from Shakespeare or the Bible merely because the subject matter of such quotations is not in evidence. Yet, it seems to me that logically such authorities are driven to that absurd extreme. Strange as it may seem, it is nevertheless true that the courts which condemn the use of the mathematical or *per diem* formula in the argument of counsel, which itemizes the various elements of damages sought to be recovered, except perhaps the courts of New Jersey and Pennsylvania, permit counsel in argument to urge the jury to return a verdict for the damages sued for, including the elements of damages for pain and suffering when established by proof, in an amount which may equal but not exceed the amount sued for, and also permit the jury to be informed, as is customary in this State, by the writ, the pleadings, the instructions of the court or the statements of counsel, of the total amount of damages which the plaintiff seeks to recover. To me this is a strange and illogical anomaly which locates the cart well ahead of the horse. To permit counsel to state the total amount of the damages sought to be recovered, but to forbid him to mention the items or factors which aggregate the total is to sanction a process of determining the aggregate amount without knowing or taking into consideration the figures of which it is composed. So to determine the sum or total in any instance indicates a disregard of the elementary principles of arithmetic which provide that the sum or total is determined by the addition of the various figures which in the aggregate equal its amount; and I know of no other or better method to find the true and actual sum or total in any set of circumstances. To find a

sum, without adding together its separate components, is obviously a mathematical and practical impossibility. Just as an attorney may properly draw an inference of negligence from the facts in evidence in a personal injury action, he may also, unless logic is to be utterly disregarded, suggest as a proper inference from the evidence of the existence of pain and suffering, an amount which, in his opinion, would constitute fair and reasonable compensation for that well recognized element of damages. The only relief sought in such an action is a recovery of a sum of money, not a judgment for love and affection or for a cure or for any other type of abstract and intangible as distinguished from concrete or practical relief. To permit a monetary recovery for pain and suffering, as a well recognized element of damages, and at the same time to forbid counsel in argument to evaluate it in terms of money, is to me the height of inconsistency. Logically both should be permitted or both should be forbidden. And yet, under the decisions of this Court pain and suffering are rightfully recognized as a proper and recoverable element of damages."

Worthy of quotation, I think, is the following from the opinion of Judge Crockett in *Olsen v. Preferred Risk Mutual Insurance Company,* 11 Utah (2d) 23, 354 P. (2d) 575, in which a number of the conflicting decisions are referred to and discussed:

"The jury is entitled to base its determination as to any amount awarded for pain and suffering upon the evidence with respect thereto, judged against the background of their experience and practical knowledge in the everyday affairs of life. If the argument has any valid purpose, and we recognize that it has, it is to discuss the issues in the case with them in that light. One of these is the question of the amount of damages the plaintiff may be entitled to for pain and suffering. To say that he could not talk about nor suggest the amount would, for all practical purposes, prevent him from talking about that issue. If he can talk about it at all and mention some gross figure, which it has always been as-

sumed he could do, it would seem no more harmful to invite the jury's attention to a process of analysis and reasoning with respect thereto based upon the time involved and reasonable compensation therefor. This seems more realistic than expecting either counsel or the jury to reach into the air and grab some arbitrary figure without making such analysis."

To deal briefly with other cases supporting the minority rule which are cited in the majority opinion here, the Supreme Court of Wisconsin adopted the minority rule in the case of *Affett v. Milwaukee & Suburban Transport Corp.,* 11 Wis. (2d) 604, 106 N. W. (2d) 274 (1960). The court held that, "The use of a mathematical formula is pure speculation by counsel, which is not supported by the evidence and presents matters which do not appear in the record." Further on in the opinion we find this language: "However, we fail to see where a mathematical formula or a pain-on-a-*per-diem* or per-month basis has its basis in the evidence, or in logical inferences from the evidence. Such arguments are beyond the scope of proper argumentation." Still further on, the court says: "Counsel for both the plaintiff and the defendant may make an argumentative suggestion in summation from the evidence of a lump sum dollar amount for pain and suffering which they believe the evidence will fairly and reasonably support. Counsel may not argue such amount was arrived at or explained by a mathematical formula or on a per-day, per-month, or any other time-segment basis." The inconsistency of such a holding should be readily apparent because there is and can be no more evidence to support a lump sum value than there can be to support a time-segment value. The Wisconsin court made no effort to explain or justify this inconsistency, although the opinion discusses the majority and the minority rules at considerable length. In arriving at its holding, the court was influenced by the size of the particular verdict and other portions of the argument of counsel.

The Supreme Court of North Dakota, in the case of *King v. Railway Express Agency, Inc.,* 107 N. W. (2d) 509, in adopting the minority rule, was as inconsistent, in my opinion, as was the Wisconsin Court. The North Dakota Court held that counsel could not give his estimates of the value of pain and suffering on a time-segment basis but that it was perfectly proper for counsel to suggest to the jury that they do so. The language of the court at that point is: "Had counsel for the plaintiff merely suggested to the jury that a method by which they might determine damages for pain and suffering was by first determining what such pain and suffering was per day, per week, per month, or per year and then told the jury to multiply such sums by the number of days, weeks, months, or years that the jury found, from the evidence, that plaintiff would suffer such pain and suffering, such argument would have been permissible."

It should be pointed out that the North Dakota court apparently regarded the remarks of counsel as testimony on the part of counsel. In this State, it is clear from the decision in the *Johnson case, supra,* that such remarks were not evidence and the most appellant was entitled to was a further charge to that effect, which was proffered by the circuit judge but declined by counsel.

In the Missouri case of *Faught v. Washam,* Mo., 329 S. W. (2d) 588, cited in support of the minority rule, the court criticized the majority rule but did not hold that the use of a mathematical formula standing alone constituted reversible error. The lower court was reversed for the cumulative prejudicial effect of several matters, including the use of a mathematical formula, excepted to by appellant. It would not be surprising, however, if Missouri should firmly follow the minority rule because the tendency in Missouri is toward the rule long in effect in Pennsylvania and more recently adopted in New Jersey, that it is improper for the court or counsel to refer to the *ad damnum* clause of the complaint. See *Bales v. Kansas City Public Service Co.,* 328

Mo. 171, 40 S. W. (2d) 665; *Votrain v. Illinois Terminal R. R. Co.,* Mo., 268 S. W. (2d) 838.

After much research on the question, one can understand why States such as Pennsylvania and New Jersey, where reference to the *ad damnum* clause of the complaint is not allowed, and Missouri, where reference thereto is frowned upon, the courts can, with consistency, adopt and follow the minority rule. It is difficult to understand how jurisdictions where such a practice does not prevail can consistently adopt and follow the minority rule. For the most part they do it by simply denominating such an argument to be evidence when it is clearly argument and not evidence. In this State, like most other jurisdictions in the United States, it is common practice for both the trial judge and counsel to refer to the *ad damnum* clause of the complaint and for the judge to instruct the jury that their verdict cannot exceed the *ad damnum* clause. Since this is approved procedure in this State and counsel have always been allowed and permitted to express their opinions based upon the evidence as to the sum of money which they feel the plaintiff is entitled to in a personal injury action, how can we say that the expression of the opinion or conclusion of counsel, when expressed in terms of a *per diem* or other time-segment basis, becomes evidence, when the expression as to a lump sum amount is perfectly permissible and has never been regarded as evidence?

The Virginia court in the *Certified T. V. and Appliance Co. case, supra,* as well as some of the other decisions supporting the minority rule, stresses the fact that pain and suffering differs in individuals and that the degree thereof may vary from day to day. This is, of course, true, but it should be borne in mind that neither counsel in argument nor the courts which follow the majority rule, make any attempt to establish a formula which would be applicable as a matter of law or fact to all parties under all circumstances. A proper argument using a mathematical formula with respect to pain and suffering is addressed only to the degree,

extent, duration and variations of the pain and suffering endured by the particular individual in the particular case as borne out by the evidence in that case. Merely because the facts are different in other cases is no reason whatsoever to prevent counsel from arguing inferences fairly arising from the evidence in the particular case being argued.

Some of the courts following the minority rule say that they are fearful that the use of the mathematical formula type argument would lead to higher verdicts for plaintiffs than would otherwise be the case; in other words, to excessive verdicts. In my humble opinion, this fear is without solid foundation and a totally insufficient reason for adopting the minority rule. The ultimate purpose of a trial is to ascertain the truth and do justice under the law. It has been my personal experience and observation that the modern trend in the use of both demonstrative evidence and demonstrative argument by counsel for both plaintiffs and defendants has been of immeasurable assistance to jurors in their conscientious effort to arrive at truth and justice. If, perchance, the use of a mathematical formula type of argument should, in some isolated case, result in a verdict which was excessive under the evidence and applicable principles of law, the courts, both trial and appellate, have full power to correct any such injustice.

Of course, as was said in our *Johnson case, supra:*

"Just as oral argument may be abused, so may such visual argument; and its abuse may be so flagrant as to require a new trial. Control of the arguments of counsel, with regard to the use of such visual aids, as with regard to oral statements, rests in the sound discretion of the trial judge."

Since the courts have full control of such type argument and full control of any unjust result which might perchance result from such type argument, I can see no sound reason for outlawing that type of argument when in the vast majority of cases such argument will tend to aid and assist conscientious juries in arriving at the ultimate objective of truth and justice under the law.

Because I regard the decision here of vital importance to the future administration of justice in this State, this dissenting opinion has become much longer than I would prefer. Even at this length, I have omitted to quote from many, many persuasive decisions and articles which so clearly show the fallacious and unsound reasons upon which the minority rule rests.

In my humble judgment, the adoption of the minority rule by this Court cannot help but lead us down a blind alley to a point of no consistent return; lead us and the trial courts into either totally inconsistent decisions, as in Wisconsin and North Dakota, or into most unjust results.

It must be borne in mind that there are many other well recognized legal elements of damage in this State, other than pain and suffering, as to which there can be no evidence of market price on either a time-segment or lump sum basis. The effect of the adoption of the minority rule is to forever foreclose plaintiffs' counsel from making any intelligent argument to a jury with respect to such elements of damage. For a simple illustration, let us assume a case of a beautiful, young married woman, with several children, who is horribly injured, mangled and disfigured, facially and otherwise, under circumstances of clear liability. It is unquestioned that for the balance of her natural life she will undergo the most torturous pain and suffering and will be forever unable to do the things that a wife and mother normally does for her family, or engage in other normal activities of the home, church, or community. Under our law, any cause of action for her medical expenses and her services are vested in her husband, so that the only issue before the jury is the amount of money to which she is reasonably entitled for her damages with respect to no element of which a witness could take the stand and testify as to any monetary value. In such a case, under the minority rule, her attorney would, in effect, have no opportunity to argue her case to the jury at all because he would be prohibited from mentioning in any specific or intelligent terms the only thing which was at issue, to wit, money.

In conclusion, it is my considered opinion here that the record before us is free from prejudicial error and that the judgment should be affirmed. However, a majority of this Court feels that it should be reversed. This being the case, I think that any reversal should be based solely upon the first exception and that this Court should refrain from passing upon the second exception in view of the fact and for the reason that the record, with respect to the second exception, is here entirely inadequate for this Court to arrive at a final and lasting opinion upon the question raised by the second exception.

ON PETITION FOR REHEARING PER CURIAM.

We have carefully considered the within Petition for Rehearing. None of the questions referred to in the Petition were overlooked or misapprehended by this Court. The Petition is accordingly denied. The decision in this case applies only to the factual situation there involved.

BUSSEY, J., dissents.