## Herb et ux. *v.* Hallowell.

Argued November 26, 1930. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*J. B. Weeks,* of *Taylor, Chadwick & Weeks,* with him *Jay G. Weiser* and *Cummings & Gubin,* for appellant.— The court erred in failing to charge the jury to find the present value of future loss of earnings: Milyak v. P. R. T., 300 Pa. 457.

In failing to instruct the jury to take into consideration plaintiff's probable expectancy of life, and the prospect of decline in earning power in old age: Burns v. P. R. R., 219 Pa. 225.

In charging on pain and suffering: McLane v. Rys., 230 Pa. 29.

In charging that there could be an award for permanent injuries in the absence of proof establishing a causal relation between the injuries and accident: Fink v. Sheldon Axle & Spring Co., 270 Pa. 476; McCrosson v. P. R. T., 283 Pa. 492; Morgan v. C. & I. Co., 273 Pa. 255.

As to the conditions which could be corrected by minor operations on the knee and ankle of the female plaintiff, the court erred in failing to charge as to the duty of plaintiff to submit to a surgical operation: Potts v. Guthrie, 282 Pa. 200; Leitzell v. R. R., 232 Pa. 475.

The trial judge erred in permitting plaintiff to testify under objection that his earnings as a school teacher would have been increased $400 a year had it not been for his injuries.

*William F. Beatty,* with him *A. Francis Gilbert,* for appellees.—Defendant should have taken a specific objection to the charge of the court on the measure of dam-

ages, and it is not reversible error in the instant case: Kahn v. Herbert, 279 Pa. 440; Moore v. Leininger, 299 Pa. 380; Gallup v. Rys., 295 Pa. 203; Gail v. Phila., 273 Pa. 275; Bostwick v. Rys., 255 Pa. 387; Snyder v. Ry., 284 Pa. 59; McCaffrey v. Schwartz, 285 Pa. 561.

The failure of the trial judge to instruct the jury to take into consideration plaintiff's probable expectancy of life and the prospect of decline in earning power in old age is not reversible error when defendant took only a general exception to the charge and did not ask for specific instructions on the point: Beitler v. R. R., 238 Pa. 1; Burns v. R. R., 219 Pa. 225; McCaffrey v. Schwartz, 285 Pa. 561.

The court did not err in its charge on pain and suffering: Wallace v. Penna. Co., 219 Pa. 327.

It was not error for the court to charge the jury that there could be an award for permanent injuries in the instant case: Fink v. Sheldon Axle & Spring Co., 270 Pa. 476; Davis v. Davis, 80 Pa. Superior Ct. 343; Tracey v. Coal & Iron Co., 270 Pa. 65; Zukowsky v. Coal & Iron Co., 270 Pa. 118.

It was not error for the court to fail to charge as to the duty of plaintiff to submit to a surgical operation in the instant case.

OPINION BY MR. JUSTICE MAXEY, March 16, 1931:

James Herb was awarded $5,520, and Lulu M. Herb, his wife, $7,250 in an action of trespass against the defendant. A motion for judgment n. o. v. was denied and the case is here on appeal.

James Herb was driving south on the Susquehanna Trail near Selinsgrove, Pa., at 2:30 P. M., August 31, 1929. His wife and a minor son were in the car. The defendant was driving north in the same locality at about the same point. A collision occurred with resulting injuries to the plaintiffs. Defendant, wishing to pass motor cars ahead of her, veered her car to her left and was driving on her left-hand side of the road in the

path of the oncoming Herb car at a considerable distance away. Defendant claimed that just before the accident she was looking at the car she was trying to pass and when she looked the other way she saw the Herb car about 200 feet distant. She then applied the brakes of her car, skidded and side-swiped plaintiffs' car and then went 40 feet further in the same direction and collided with another car. Plaintiffs' car was so damaged as to require the expenditure of $228.80 for its repairs. The occupants of plaintiffs' car were not thrown out. James Herb testified that he received a blow on the head, ear and side of the face, that his ear bled, and that he felt nauseated on his way home to Pittsburgh on a bus. He was between 44 and 45 years of age at the time of the accident. He was employed as a teacher of mechanical drawing in the high school of Pittsburgh. Prior to the accident he was in good health, but thereafter he suffered from dizziness, headaches and nausea, which condition he claimed continued to the time of the trial. Mrs. Herb was thrown under the instrument board of her husband's car. Her back was hurt, her knees bruised, and her right ankle injured. Her sacro-iliac joint was sprained and, so it was claimed, permanently injured; her right knee was injured, and she complained of a displaced cartilage in the right knee joint, and a displaced bone in the right ankle. Her body was discolored by bruises, and she claimed that the injuries caused her pain if she indulged in physical activities, which pain she testified continued to the time of the trial. John Herb, the minor son, was injured in the chest and was under the care of a doctor for his nerves. The jury returned no verdict for the son's alleged injuries.

The principal complaint in this case relates to the measure of damages. Appellant contends that the charge of the court on the question of damages was inadequate and erroneous, and that evidence was improp-

erly admitted as to James Herb's blighted prospective increase in salary.

The eighth assignment of error is as follows: "The learned trial judge erred in charging the jury as follows: 'Then you will also take into consideration the pain and suffering of any of these three plaintiffs, or all of them, endured by reason of the injuries, if there were any. There is no fixed standard as to any amount to allow for pain and suffering. That is to be guided by your good judgment. As I said before, consider the testimony in the case carefully and see what you think the pain and suffering of Mr. Herb and his wife, and the little boy, are worth.' The exception: Now, February 27, 1930, before the jury retires in the presence of the court, counsel for the defendant excepts to the charge of the court and answers to the plaintiff's points, and ask that the same be filed, and that the stenographer transcribe the record and file the same."

The nature of pain and suffering is such that no legal yardstick can be fashioned to measure accurately reasonable compensation for it. No one can measure another's pain and suffering; only the person suffering knows how much he is suffering, and even he could not accurately say what would be reasonable pecuniary compensation for it. Earning power and dollars are interchangeable; suffering and dollars are not. Two persons apparently suffering the same pain from the same kind of injury might in fact be suffering respectively pains differing much in acuteness, depending on the nervous sensibility of the sufferer. Two persons suffering exactly the same pain would doubtless differ as to what reasonable compensation for that pain would be. This being true, it follows that jurors would probably differ widely as to what is reasonable compensation for another's pain and suffering, no matter how specific the court's instructions might be. All this is merely suggestive of the practical difficulties confronting a trial judge who is about to instruct the jury as to

the measure of damages for pain and suffering. It is, of course, the duty of the trial judge to make it clear to the jury that in awarding damages for pain and suffering the award must be limited "to compensation and compensation alone": Collins v. Leafey, 124 Pa. 203, 214. Though "compensation" is an approved word in instructions in cases of this kind, it is not an infallible guide to a just verdict. Jurors may differ widely in their conception of the word "compensation." One juror might hold that no amount of money could justly compensate one for acute pain and suffering; another might hold that even a small sum of money would be just compensation in such a case. "Compensation" is defined in Webster's New International Dictionary as "amends; an equivalent or recompense; that which makes good the lack or variation of something else." Among the synonyms set out are "recompense, satisfaction, set-off." Appellant objects particularly to that part of the charge which says: "Consider the testimony carefully and see what you think the pain and suffering of Mr. Herb and his wife, and the little boy, are worth." Appellant argues that this is "error in that it places a price or money equivalent upon pain and suffering." This is rather close to what a plaintiff is seeking when he asks reasonable monetary compensation for pain and suffering. While it may be inappropriate to use "price" in connection with pain and suffering, for price is something which one ordinarily accepts voluntarily in exchange for something else, yet "price" is also defined in Webster's New International Dictionary as "a recompense," which, as we noted above, is a dictionary synonym for "compensation." The word "worth" is defined in the same dictionary as "furnishing an equivalent for." While the use of the word "price" or "worth" in instructions as to damages for pain and suffering has been condemned and the use of the word "compensation" has been approved (Baker et al. v. Pennsylvania Co., 142 Pa. 503; Collins v. Leafey, supra; McLane

v. Pittsburgh Rys. Co., 230 Pa. 29), it is a matter of observation that few philologists get on juries. We believe that only a philologist would appreciate the difference between the word "compensation" and the word "price" or "worth" as used in instructions to be considered by juries in assessing damages for the elements referred to. In the criminal law elaborate attempts to define "reasonable doubt" have often led judges into mazes of subtlety and casuistry where the mind of the average juror could not follow them. Likewise, a trial judge's attempt to make clear to jurors by discriminating between words that are near-synonyms, what is and what is not a fairly accurate measuring standard to be used in awarding damages for pain and suffering often fails where the use of common words in a common sense charge succeeds.

In the case before us, the trial judge said: "There is no fixed standard as to any amount to allow for pain and suffering. That is to be guided by your judgment." This was in effect an instruction that there was no infallible objective standard with which to measure damages for these subjective elements, but that they were to use good common sense in assessing damages for them. In considering the instructions of trial judges the appellate courts cannot start with the assumption that jurors are totally untutored persons and know nothing about the practical administration of justice. The average persons knows intuitively and by experience that there is no unerring measure that can be applied in determining compensation for pain and suffering—every person who has had a violent toothache knows that—and that one's common sense must guide him in making the award for this element of damages. It has been well said that "the administration of justice is such an adjustment of the relations of men to each other and to society as conforms to the moral sense of the community."

The instructions as to pain and suffering was not misleading, and if the appellant wished more specific instructions on this point, there should have been a request made for them: Snyder v. Reading Co., 284 Pa. 59. The eighth assignment of error is overruled.

The next assignment of error stressed by the appellant is the third. Plaintiffs' counsel made the following offer: "We offer to prove by this witness that by reason of his length of service he was entitled to an increase in salary, that it was refused him on account of his physical condition." This was objected to and the objection was overruled. The only evidence admitted under this offer was the following: "Q. (By plaintiffs' counsel.) You say you were entitled—Objection. Overruled. A. (By the witness.) $400. Q. Did you get it? A. No, sir, because my supervisor said—Objection. Sustained." This evidence considered apart from the offer, which we assume the jury did not hear, was meaningless and could not have affected the verdict.

The record discloses that at the conclusion of the argument of the plaintiffs' counsel, defendant's counsel moved that a juror be withdrawn and the case continued because of the reference plaintiffs' counsel made in his closing argument to Mr. Herb's being entitled by his services in the schools of Pittsburgh to an increase of $400 a year, which increase was refused on account of his being incapacitated by the accident. Though this was not assigned as error, it was referred to in the argument in support of the eighth assignment. "When counsel misstate facts or material evidence, or resort to comment unfairly or unduly prejudicial to the other side, it is the duty of opposing counsel at once to call the attention of the court to the matter, and the action of the court may then become the subject of exception. In general, it is matter of discretion and reviewable only for abuse": Com. v. Ezell, 212 Pa. 293. This is the rule both in criminal and civil cases: Donnelly v. Buffalo & Lake Erie Traction Co., 40 Pa. Superior Ct. 110, 115.

The trial judge in his charge made it clear to the jury that they were to decide the case solely upon the evidence submitted to them in the course of the trial. We find no reversible error in the eighth assignment. It is overruled.

The fourth assignment of error: "The learned trial judge erred in failing to instruct the jury to reduce any award as to future loss of earnings that they might make to its present worth." No specific instructions were asked for by appellant on this point, and only a general exception to the charge was taken. In the case of McCaffrey v. Schwartz, 285 Pa. 561, this court said: "A mere failure to charge on the subject of the obligation of the jury to reduce its award of future payments, anticipated in a verdict, to their present worth, is not always to be held reversible error, particularly in the absence of a request so to charge or of any effort to call the trial judge's attention to a lack of such instructions. On the contrary, there may be cases where, under such circumstances, the default would amount to no more than an inadequacy."

In view of the moderate size of the verdict recovered by James Herb in this case, we think that the omission in this case in the charge as to the present worth of future payments amounts to no more than an inadequacy. This assignment is overruled.

The sixth assignment of error: "The learned trial judge erred in charging on the measure of damages, in that the jury was not instructed as to the probable expectancy of life of plaintiff, in connection with an award for permanent injuries." No specific instruction was asked for on this point and no specific exception was taken to the alleged failure of the court to charge on this point. We assume that the sixth assignment refers particularly to James Herb's claim for loss of earning power, as no claim was made for any impairment of Lula Herb's earning power. In McCaffrey v. Schwartz, supra, this court said: "Should the exaggerated size

of a particular award indicate the jury's failure to discount the value of future losses, the absence of all instructions on present worth might well lead to a reversal in cases where attention was called to the oversight at the trial or a new trial was refused despite an allegation of excessiveness in the verdict." We think this principle applies also to the failure of a court to call the jury's attention to the fact that a man's earning power naturally decreases as his life approaches its end, and if the exaggerated size of a particular award indicated the jury's failure to consider this fact, the absence of instructions as to the diminution of a man's earning power might well lead to reversal in cases where the oversight was called to the attention of the court at the trial or a new trial was refused despite an allegation of excessiveness in the verdict. However, we note the fact that no specific instructions were asked for on this point and no specific exception taken, and in view of the further fact that James Herb was less than 45 years of age at the time of the accident and was engaged in the work of an instructor, it is a fair inference that normally his earning power would not diminish for many years. We find no reversible error in the sixth assignment, and it is overruled.

We find no reversible error in the other assignments, and the only remaining ones we will discuss are 1 and 2. These bring up the question of the alleged excessiveness of the verdict. As to plaintiff, James Herb: The total cash outlay of this plaintiff, for repairing the damages to his automobile, for medical services, and for a house-maid to do Mrs. Herb's work when the latter was incapacitated, was $429.80. This leaves $5,090.20 to be allocated to pain and suffering and impairment of earning power. There was testimony in behalf of this plaintiff which if accepted by the jury would justify the award made. He himself testified that since receiving the injuries he had been subject to dizziness and that these attacks were becoming more frequent

and that they interfered with his work, that he could not concentrate, etc. He testified he had no such dizziness before the accident. A physician called by the plaintiff testified that he examined James Herb and found that there had been an injury to semicircular canals in his ear, that this caused a slight diminution of hearing, that he found him to be dizzy, with a very poor equilibrium, and that the disability from which he is suffering will not decrease, but will probably increase as he grows older. As to Lula M. Herb: The verdict awarded to her seems liberal, but we would not be justified in reversing this judgment unless the verdict on which it was founded was shocking to the conscience. Mrs. Herb testified that since the accident she has had continuous pains in her knee, her foot and her back. A physician called by the plaintiff testified that upon an examination of Mrs. Herb he found evidences of a fracture or dislocation of the scaphoid bone, one of the small bones of the foot at the ankle, also evidences of a sacro-iliac sprain, that the effect of this condition was "tenderness and pain" and that it does and will affect her in her walk, that the injury to the scaphoid bone interferes with the proper use or function of the ankle joint and gives the patient pain and tenderness in walking. He also said that the patient complained of a "locking of the knee." The physician testified that the sacro-iliac sprain was permanent.

As to whether or not the verdict was excessive, the trial judge is always in a much better position to determine that than we are, for he has the opportunity to see the witnesses and to hear their testimony. In his opinion refusing a new trial, he characterized the verdict as "moderate," and added: "We were fully expecting a larger verdict. The testimony in this case and the injuries of the plaintiff fully warranted it."

The judgments in favor of plaintiffs are affirmed.