The EVENING STAR NEWSPAPER COMPANY, a corporation, and John Horan, Appellants,

v.

Ruth H. GRAY and Chester H. Gray, Appellees.

No. 2868.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 3, 1962.

Decided March 20, 1962.

Francis L. Casey, Jr., Washington, D. C., for appellants.

David G. Bress, Washington, D. C., with whom Lucien Hilmer and J. H. Krug, Washington, D. C., were on the brief, for appellees.

Before HOOD, Chief Judge, QUINN, Associate Judge, and MYERS, Associate Judge of The Municipal Court for the District of Columbia, sitting by designation.

HOOD, Chief Judge.

This case arose when defendant's van collided with the rear of another car, driving that car into the car in which plaintiff Ruth Gray was a passenger. Suit was filed in the United States District Court, seeking damages of $50,000 for Mrs. Gray and $20,000 for her husband. The case was certified to the Municipal Court [1] under Code 1961, § 11–756(a), and tried there solely on the issue of damages, the defendant admitting liability. Verdicts were re-

1. Gray v. Evening Star Newspaper Co., 107 U.S.App.D.C. 292, 277 F.2d 91.

turned in the amount of $8,000 for the wife and $3,000 for the husband. Defendant appeals from the trial court's denial of its motion for remittitur or, in the alternative, for a new trial. It assigns as error that the trial court in its instructions mentioned the ad damnum and told the jury that this was a certified case as to which the $3,000 jurisdictional limit on the Municipal Court did not apply; that the court permitted counsel for plaintiffs to argue damages for pain and suffering on a per diem basis; that the court failed to grant a mistrial when plaintiff's counsel mentioned the ad damnum on voir dire; and, lastly, that the amounts of the verdicts were excessive.

■ The court instructed the jury that the case had been certified from the District Court and that the $3,000 limit normally applicable to Municipal Court verdicts was therefore not applicable. On the other hand, the court refused to allow counsel for defendants to explain why the case was certified, or to include such an explanation in its instructions to the jury. The court acted correctly in all these instances. See Melton v. Capital Transit Co., 102 U.S.App. D.C. 306, 253 F.2d 42. The Code itself provides that, when a case is certified from the United States District Court, the jurisdiction of the Municipal Court "shall extend to the amount claimed in such action, even though it exceed the sum of $3,000." Code 1961, § 11–756(a). It would have been highly improper for the jury to have been told that the case had been certified because a District Court Judge thought the case would not justify a judgment in excess of $3,000. The District Court Judge had not heard the evidence and was in no position to make a comparative evaluation of conflicting evidence. His appraisal of the case, sometimes made even before pretrial, is entitled to no weight by the jury which hears the evidence. Experience has proved that the District Court Judge's appraisal is often erroneous; and inform-

ing the jury of the reason for certification would serve no proper purpose.

■ With reference to the ad damnum, the court instructed the jury that

"* * * your verdict may be in such amount as you may determine to be fair, reasonable, and adequate, under the instructions on damages to be given to you by the Court.

"The plaintiff in a suit can never recover any more than is claimed. In the present case the plaintiff, Mr. Gray, is claiming $20,000 and the plaintiff, Mrs. Gray, is claiming $50,000. In this case as in any other case neither can recover any more than the amount claimed. The fact that in a certain case the plaintiff claims a certain amount does not mean they are entitled to recover that amount. This is a matter to be determined by you from the evidence and in the light of the law as I state it to you. The recovery can be for the amount claimed or for any sum less than the amount claimed which you might find from the evidence has been established. Recovery can never be in excess of the amount claimed."

On the question of the propriety of reference in the court's instructions to the amount sued for, the authorities are in hopeless conflict. See 15 Am.Jur., 1961 Cum.Supp., Damages, § 371.5, p. 114. Practice varies even among the trial courts of the same jurisdiction.[2]

Well-considered decisions in several jurisdictions have held it to be reversible error to mention the ad damnum in the charge. See Botta v. Brunner, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331, and cases there cited; Annotation, 2 A.L.R.2d 454. The argument against mention of the ad damnum was well stated by District

2. See Simmons v. Adams, 202 Va. 926, 121 S.E.2d 379. It appears that the practice varies among the judges of our United States District Court as well.

Judge Paul, concurring in Williams v. Nichols, 4 Cir., 266 F.2d 389, 394:

"There is no sound reason why the jury should be informed, either by counsel or the Court, of the damages named in the complaint. It is a matter of common knowledge that ordinarily in a tort case, the damages laid in the complaint are in an amount arbitrarily chosen, greatly exaggerated, and having little, if any, value as a measurement of the damage actually suffered. It is being charitable to say that at best they represent the plaintiff's own opinion of what damage he has suffered. But neither the plaintiff nor anyone else would be allowed to go on the witness stand and testify as to his monetary estimate of the plaintiff's damages. This being so it is certainly objectionable to get the same estimate before the jury by the unsworn statements of counsel in the course of argument. It is even more harmful, because of the greater weight given it by the jury, when it comes from the bench in the Court's instructions. The basic evil is that it gives the jury the impression that the amount sued for (the plaintiff's own estimate) is significant and to be considered as a factor in arriving at such award as the jury may make."

We think that such statements as these, and decisions such as Botta v. Brunner and Simmons v. Adams, supra, are grounded upon an appraisal of the jury process to which we cannot subscribe. We agree with the Ninth Circuit Court of Appeals that there is no reason why the jury should be influenced by the amount claimed by the plaintiff, any more than by any other claims advanced by the parties. "Such claims are not evidence, and it is an insult to human intelligence to say that they are likely to mislead or otherwise influence the jury." Hoffschlaeger Co., Ltd. v. Fraga, 290 F. 146, 149.

Decisions of the Supreme Court and the highest court of this jurisdiction have taken the same view. In McDermott v. Severe, 25 App.D.C. 276, 288, affirmed 202 U.S. 600, 26 S.Ct. 709, 50 L.Ed. 1162, the court, after instructing on the measure of damages, told the jury:

"You must exercise your own best judgment in regard to that. Of course you are limited by the declaration, and cannot exceed the amount claimed, $25,000. Of course that is not a suggestion to you that you should take that as a criterion to go by. That is only a limit, above which you cannot go. It is not a suggestion that you should go to that amount. The question is simply: What is the proper compensation to this boy for this injury, in case you find a verdict in his favor? * * *"

It does not appear that this instruction was specifically objected to on appeal, but in affirming the Court of Appeals decision the Supreme Court held that the language of the charge was properly cautionary, and added: "We cannot see how the plaintiff in error was prejudiced by this instruction."

In Chesapeake & Ohio R. Co. v. Carnahan, 241 U.S. 241, 36 S.Ct. 594, 60 L.Ed. 979, the defendant objected to mention of the ad damnum in the instruction. The Court, calling the objection "untenable," said at page 244, 36 S.Ct. at page 595:

"As we have seen, the court explicitly enjoined upon the jury that there must be a proximate and causal relation between the damages and the negligence of the company, and the reference to the sum of $35,000 was a limitation of the amount stated in the declaration. There could have been no misunderstanding of the purpose of the instruction."

See also Norfolk & W. Ry. Co. v. Earnest, 229 U.S. 114, 120, 33 S.Ct. 654, 656, 57 L.Ed. 1096, in which the Court said of the mention of the ad damnum in a similar instruction that it "could only have been understood as marking a limit beyond which the jury could not go."

■ Washington & Georgetown R. Co. v. Hickey, 5 App.D.C. 436, affirmed 166 U.S. 521, 17 S.Ct. 661, 41 L.Ed. 1101, and District of Columbia v. Duryee, 29 App.D.C. 327, lend further support to the proposition that if the jury is correctly instructed as to the measure of damages, mention of the ad damnum as a limitation on recovery is not improper.

It is true that, at the time these cases were decided, it was the practice in District of Columbia courts to have the jury take the pleadings into the jury room with it. Under those circumstances, it might be argued, no harm was done in mentioning the ad damnum to the jury. But language in Melton v. Capital Transit Co., 102 U.S. App.D.C. 306, 253 F.2d 42, indicates that, while the earlier practice is no longer customary, the McDermott, Hickey and Duryee decisions are still good authority. The court in the Melton case implied that the jury could be told of the ad damnum, for it said: "We would suppose that upon request, the plaintiff should be entitled to receive an instruction that the jury * * * may award damages in such amount as it shall find the plaintiff is entitled to receive *up to the amount claimed in the action.*" [Emphasis supplied.]

The charge of the trial court in the present case emphasized that the ad damnum was a ceiling only, and that the jury was to fix damages with reference not to the sum claimed but to that amount justified by the evidence. Taken as a whole, the instruction is similar to those approved by the Supreme Court in McDermott v. Severe, Chesapeake & Ohio R. Co. v. Carnahan, and Norfolk & W. Ry. Co. v. Earnest, supra. It correctly stated the law and did not mislead the jury.

■ On the same grounds, we must reject defendant's contention that it was improper to refer to the ad damnum in argument. See Graham v. Mattoon City Ry. Co., 234 Ill. 483, 84 N.E. 1070; Williams v. Williams, 87 N.H. 430, 182 A. 172; Eich-

stadt v. Underwood, Ky.App., 337 S.W.2d 684.

■ Nor did the trial judge err in refusing to declare a mistrial when counsel for plaintiffs mentioned the ad damnum on voir dire. This occurred in the course of his examination of one member of the jury panel whose wife was employed by the defendant Evening Star. The venireman denied that his wife's affiliation would prevent him from finding for plaintiff in an amount up to $50,000. Since this panel member was subsequently challenged for cause by plaintiffs' counsel, despite his answer, the question might better have been asked in a form which would not call the attention of the jury panel to the ad damnum in this early stage of the trial. But this was an isolated reference, never repeated, and for the reasons given above, it should not be considered grounds for a mistrial.

Appellant also contends that the court erred in permitting counsel for plaintiffs to argue the damages for pain and suffering on a per diem basis. Counsel in his closing argument told the jury that

"* * * if you award to her during the balance of her life expectancy seven dollars a day you would reach a verdict of $50,000. If you give her $3.50 a day your verdict would be $25,000. I submit to you that $3.50 or $7 for what she has been through and what she has yet to face would be fair and reasonable compensation which you in your own judgment would have to determine."

And in his rebuttal he repeated:

"I say three, four, five, six, or seven dollars per day for this kind of an injury is not any more than is fair and reasonable compensation."

How far counsel for plaintiffs may go in arguing to the jury a per diem formula or some other measure for computing future pain and suffering is a question which is currently the subject of much dispute among

courts and commentators. Both appellants and appellees in the case before us have adverted to the recent decisions in many jurisdictions, which have arrived at opposite conclusions on this issue.[3] It is fruitless to say of either position that it represents the weight of authority, or a discernible trend.

■ For the same reasons that we would permit mention of the ad damnum, we would permit counsel considerable latitude in arguing damages. The Supreme Court of Washington, in refusing to disapprove use of the per diem argument, has stated that "Argument is not evidence, and we cannot attribute to any jury in this state a lack of sufficient mentality to distinguish between the two." Jones v. Hogan, 56 Wash.2d 23, 351 P.2d 153, 159. With this view, which echoes that of the Ninth Circuit in the Hoffschlaeger case, supra, we find ourselves in accord. As the Michigan Supreme Court pointed out in Yates v. Wenk, 363 Mich. 311, 109 N.W.2d 828, at page 831:

"* * * like every other State, we require juries to determine the value of pain and suffering. We see little merit in forbidding lawyers to try to help in that difficult task.

"Nor are we impressed that plaintiff's lawyer's use of the mathematical formula will lead toward horrendous verdicts. Such an argument is not, like the judge's instruction, binding on the jury. It will undoubtedly be effectively balanced by defendant's lawyer's counter argument. Further, juries automatically discount 'lawyer talk' to some degree. And trial judges automatically instruct that such arguments are not evidence."

■ This court has a similar confidence in our juries' ability to distinguish between argument and evidence. And it should always be remembered that if a jury does return an obviously excessive verdict, the trial judge has the power and duty to set aside such verdict and order a new trial.

■ It should be noted that plaintiffs' attorney in this case used no charts or blackboard in his argument to the jury. Cf. Haycock v. Christie, 101 U.S.App.D.C. 409, 249 F.2d 501. There was no elaborate itemization of damages, such as was upheld in Ratner v. Arrington, Fla.App., 111 So.2d 82, 86, or disapproved in Affett v. Milwaukee & Suburban Transport Corp., 11 Wis.2d 604, 106 N.W.2d 274, 276. The suggested per diem amounts were only mentioned orally, and then only twice, and in each case they were coupled with the phrase "fair and reasonable compensation." The argument taken as a whole made it clear that the per diem sums were offered for illustrative purposes only,[4] and was so worded as to emphasize to the jury that theirs was the final responsibility of assessing the damages for pain and suffering. Thereafter the trial court in instructing the jury reiterated that it should decide the case solely upon the evidence admitted by the

3. See, e. g., Botta v. Brunner, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331, and cases there cited; Affett v. Milwaukee & Suburban Transport Corp., 11 Wis.2d 604, 106 N.W.2d 274; Certified T.V. and Appliance Co. v. Harrington, 201 Va. 109, 109 S.E.2d 126; Faught v. Washam, Mo., 329 S.W.2d 588; and Henne v. Balick, 1 Storey 369, 51 Del. 369, 146 A.2d 394. Decisions affirming use of per diem formula: Ratner v. Arrington, Fla.App., 111 So.2d 82, and cases there cited; Yates v. Wenk, 363 Mich. 311, 109 N.W.2d 828; Louisville & Nashville R. Co. v. Mattingly, Ky., 339 S.W.2d 155; Hernandez v.

Baucum, Tex.Civ.App., 344 S.W.2d 498; Caley v. Manicke, 29 Ill.App.2d 323, 173 N.E.2d 209; Annotation, 60 A.L.R.2d 1347; 12 Rutgers L.Rev. 522; 19 Ohio St.L.J. 780; 43 Minn.L.Rev. 832; 28 Univ. of Cincinnati L.Rev. 138; 61 W.Va. L.Rev. 302; 36 Dicta 373; 23 NACCA L.J. 255; 24 NACCA L.J. 252.

4. Cf. Boutang v. Twin City Motor Bus Co., 248 Minn. 240, 80 N.W.2d 30, citing Hallada v. Great Northern Ry. Co., 244 Minn. 81, 69 N.W.2d 673, 245 Minn. 581, 72 N.W.2d 74, certiorari denied 350 U.S. 874, 76 S.Ct. 119, 100 L.Ed. 773.

court and should not consider as evidence any statement of counsel made during the trial unless made as an admission or stipulation.

Under these circumstances, we find it unnecessary to decide how far counsel may properly go in arguing damages. Our decision is not to be taken as a blanket approval of the arguments employed by counsel in the cited cases.[5] We hold that the argument of plaintiffs' counsel, taken in its context, was not improper; it should not have misled the jury, and apparently did not.[6]

 The appellant contends, finally, that the verdicts returned were excessive. The granting of a new trial on the ground that the verdict is excessive is ordinarily within the discretion of the trial court, and its action is reviewable only for abuse of that discretion. All Weather Storm Windows, Inc. v. Zahn, D.C.Mun.App., 112 A.2d 496. On the record presented we cannot say that the verdict was so grossly excessive that the trial court erred in permitting it to stand.

Affirmed.

MYERS, Associate Judge (concurring).

Although I am in accord with the final disposition of this appeal, I am in disagreement with what appears to be specific approval in the majority opinion of permitting trial attorneys for plaintiffs (or for defendants) in future cases to argue damages for pain and suffering on a *per diem* basis. In view of the result reached in the present case, I am constrained to overlook the error of argument on that basis as harmless. However, the future use of this type of argument to juries in this jurisdiction on the determination of compensation for pain and suffering should be prohibited as improper. Any so-called mathematical formula to be followed by a jury in deciding the amount of damages to be fixed by them for pain and suffering is not only not supported by evidence, but also amounts to an invasion of the jury's domain.

As has been indicated, there are recent decisions in many jurisdictions which have arrived at different conclusions on this same issue and there seems to be no discernible trend. However, I am satisfied that the better practice is to prohibit the use of *per diem* argument as a suggested means of reaching a fair evaluation for compensating pain and suffering.

In discussing the matter of a proposed mathematical formula for determining the allowance for pain and suffering and inconvenience, the United States Court of Appeals for the Eighth Circuit said in Chicago & N. W. R. Co. v. Candler, 283 F. 881, 884, 28 A.L.R. 1174:

"No such process is possible in estimating the amount to be allowed for pain and suffering, or for pain and inconvenience. In the matter of pain, suffering, or inconvenience, no books are kept, no inventories made, no balances struck.

"Neither the plaintiff in the case nor anyone else in the world has ever established a standard of value for these ills. The only proof ever received to guide the jury in determining the amount of the allowance they should make is, broadly stated, the nature and extent of the injury, its effect and results. They are instructed to allow a reasonable sum as compensation, and in determining what is reasonable under the evidence to be guided by their observation, experience and sense of fairness and right. At the best the allowance is an estimated sum deter-

5. Note 3, supra.

6. We note in passing that plaintiff Mrs. Gray was awarded $8,000, or less than one-third of the lowest per diem esti- mate of her attorney, while Mr. Gray was awarded $3,000, or $300 more than the out-of-pocket medical expenses claimed.

mined by the intelligence and conscience of the jury, and we are convinced that a jury would be much more likely to return a just verdict, considering the estimated life as one single period, than if it should attempt to reach a verdict by dividing the life into yearly periods, setting down yearly estimates and then reducing the estimates to their present value. The arbitrariness and artificiality of such a method is so apparent that to require a jury to apply it, we think, would be an absurdity."

The United States Court of Appeals for the Fifth Circuit approved this ruling in the Candler case, supra, in the case of Texas & Pac. Ry. Co. v. Buckles, 232 F.2d 257, 264, Writ of Certiorari denied 351 U.S. 984, 76 S.Ct. 1052, 100 L.Ed. 1498.

The Supreme Court of Appeals of West Virginia refused to recognize the *per diem* basis in the case of Crum v. Ward, 122 S.E.2d 18, 26, saying:

"The mathematical formula argument is based wholly on speculation or imaginary inferences, not supported by facts, in reality by supposed facts which could not be received in evidence. * * * No effort, perhaps, would succeed in pointing out the almost innumerable variables necessarily existing or involved in such speculation. * * * It is sometimes contended that though such uncertainties exist, necessitating speculation, it is more reasonable to permit counsel to suggest or speculate than to permit the jury to do so. But the time-tried and time-honored method of preventing such speculation, and preventing the inflaming of the jury, has afforded the courts a way to deny unjust verdicts by setting them aside. We would assume that if the tried and proved method is to be discarded, and counsel permitted to suggest as proper a mathematical formula that courts would be bound by a finding based on that formula, and would be powerless, in most cases, at least, to

control such verdicts, though there existed little doubt that they were unduly influenced."

On the same subject, the Supreme Court of Pennsylvania said in the case of Herb v. Hallowell, 304 Pa. 128, 154 A. 582, 584, 85 A.L.R. 1004:

"The nature of pain and suffering is such that no legal yardstick can be fashioned to measure accurately reasonable compensation for it. No one can measure another's pain and suffering; only the person suffering knows how much he is suffering, and even he could not accurately say what would be reasonable pecuniary compensation for it. Earning power and dollars are interchangeable; suffering and dollars are not. Two persons apparently suffering the same pain from the same kind of injury might in fact be suffering respectively pains differing much in acuteness, depending on the nervous sensibility of the sufferer. Two persons suffering exactly the same pain would doubtless differ as to what reasonable compensation for that pain would be. This being true, it follows that jurors would probably differ widely as to what is reasonable compensation for another's pain and suffering, no matter how specific the court's instructions might be. * * *"

The Supreme Court of Florida in the case of Braddock v. Seaboard Air Line Railroad Co., 80 So.2d 662, 668 said:

"The rule for measuring damages for pain and suffering, past, present and future, has been often stated, * * * 'As to pain and suffering the law declares that there is no standard by which to measure it except the enlightened conscience of impartial jurors. * * *'

(p. 669) "* * * Jurors know the nature of pain, embarrassment and inconvenience, and they also know the nature of money. Their problem of equating the two to afford reasonable

and just compensation calls for a high order of human judgment, and the law has provided no better yardstick for their guidance than their enlightened conscience. Their problem is not one of mathematical calculation but involves an exercise of their sound judgment of what is fair and right. * * *"

The Supreme Court of Missouri in the case of Faught v. Washam, 329 S.W.2d 588, 603, said:

"To us, the considerations advanced by the authorities disapproving the mathematical formula argument are more persuasive. Whatever may be the cold logic or academic theory of the matter, the ungilded reality is that such argument is calculated and designed to implant in the jurors' minds definite figures and amounts not theretofore in the record (and which otherwise could not get into the record) and to influence the jurors to adopt those figures and amounts in evaluating pain and suffering and in admeasuring damages therefor. *If an argument* of this character *is permissible and proper, it would be just as logical, and equally as fair, to permit 'expert witnesses' to evaluate pain and suffering on a per diem or per hour basis—a revolutionary innovation which, so far as we are advised, not even the most ardent zealots of the mathematical formula technique have (as yet) proposed.* * * *"

The Supreme Court of Wisconsin in Affett v. Milwaukee & Suburban Transport Corp., 11 Wis.2d 604, 106 N.W.2d 274, 280, has said:

"The difficulty in using a mathematical formula to measure damages for pain and suffering is inherent in the nature of pain and suffering. It cannot be measured by any such mathematical standard. * * * The present rule for measuring damages is as fixed as the nature of the subject matter will permit.

* * * We fail to see where a mathematical formula or pain-on-a-per-diem or per-month basis has its basis in the evidence. * * * Such arguments are beyond the scope of proper argumentation."

The Supreme Court of New Jersey in a well reasoned opinion in the case of Botta v. Brunner, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331 (citing many supporting authorities) had this to say about the argument of damages for pain and suffering upon a *per diem* basis:

(138 A.2d p. 718) "For hundreds of years, the measure of damages for pain and suffering following in the wake of a personal injury has been 'fair and reasonable compensation.' This general standard was adopted because of universal acknowledgment that a more specific or definitive one is impossible. There is and there can be no fixed basis, table, standard, or mathematical rule which will serve as an accurate index and guide to the establishment of damage awards for personal injuries. And it is equally plain there is no measure by which the amount of pain and suffering endured by a particular human can be calculated. * * * The varieties and degrees of pain are almost infinite. * * *"

(p. 720) "* * * Pain and suffering have no known dimensions, mathematical or financial. There is no exact correspondence between money and physical or mental injury or suffering, and the various factors involved are not capable of proof in dollars and cents. For this reason, the only standard for evaluation is such amount as reasonable persons estimate to be fair compensation. * * *"

(p. 722) "There can be no doubt that the prime purpose of suggestions, direct or indirect, in the opening or closing statements of counsel of per

hour or per diem sums as the value of or as compensation for pain, suffering and kindred elements associated with injury and disability is to instill in the minds of jurors impressions, figures and amounts not founded or appearing in the evidence. * * *"

(p. 723) "* * * They have no foundation in the evidence. They import into the trial elements of sheer speculation on a matter which by universal understanding is not susceptible of evaluation on any such basis. No one has ever argued that a witness, expert or otherwise, would be competent to estimate pain on a per hour or per diem basis. * * *"

(p. 725) "In the final analysis, we hold the view that suggestions of this sort we are asked to approve here constitute an unwarranted intrusion into the domain of the jury. * * * the matter of assessment of reasonable compensation for personal injuries must be left to the traditional trier of the fact and cannot be gauged by any established graduated scale. * * *"

Such an unrealistic formula, unsupported by evidence in the trial, definitely tends to encourage a jury to use an easy multiplication method rather than to require them from all the evidence to fix a fair and reasonable compensation for pain and suffering in accordance with the time-recognized and proven basic rule in damages. It is a factor in reaching unfair verdicts in those cases where the defendant has honestly admitted liability and only asks the jury to fairly and reasonably name the amount of damages to be paid. To permit per diem evaluation of pain and suffering would plunge the already subjective determination into absurdity by demanding accurate mathematical computation of the present worth of an amount by guesswork. It amounts to not only sheer speculation but substitutes unproven and fanciful standards of evaluation for evidence.